THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TIMOTHY D. NELSON, Defendant-Appellant.

Second District    No. 79-610

Opinion filed September 9, 1980.

Daniel J. Cain, of Sreenan & Cain, of Rockford, and J. Steven Beckett, of Champaign, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Timothy D. Nelson was convicted after a jury trial of the offense of criminal obscenity (Ill. Rev. Stat. 1977, ch. 38, par. 11—20). He was sentenced to a term of 45 days in jail and fined $1,000. Defendant appeals, contending that the trial court prejudicially erred in refusing to admit a public opinion poll on the issue of community standards and the

proffered testimony of an expert witness analyzing the results of the poll. Alternatively, he contends that he was improperly sentenced.

The defendant was an employee of an "adult book store" in Rockford which showed 8 mm. films. The films had been viewed by a police officer posing as a customer and were thereafter seized pursuant to a search warrant. The prosecution evidence consisted of the testimony of the undercover officer and that of the officers who executed the search warrant, together with a showing of the three films which had been seized.

The issue before us arises from a request made by the State for a *voir dire* examination of defendant's witness Roderick Bell in the course of the defense presentation. The witness is a Ph.D. and a social scientist who specializes in survey research methodology and the conducting of public opinion polls. His expertise as a social scientist and professional pollster was stipulated. The purpose of the *voir dire* examination was to determine whether or not the results and analysis of the poll would be admissible in the trial. In his *voir dire* testimony Dr. Bell described the components necessary to produce a professionally and scientifically valid public opinion poll, and the purpose behind it. He then detailed the public opinion poll that he had supervised and conducted for the defense counsel's law firm in connection with ascertaining the community standards for the State of Illinois with reference to obscenity. He stated that he was not retained to conduct a public opinion poll for the purposes of this single case, but for whatever use those results could be taken. The target for the poll was the adult population of the State of Illinois. The sample was 770 persons. The State was divided into 77 areas of approximately equal population, and then using a random selection technique, representatives were sent out to conduct 770 interviews. The questionnaire prepared by Dr. Bell was utilized in the interviews. The interviews and the answers to the questionnaires were independently verified. The completed questionnaires and computer processing printout were identified. Dr. Bell gave his professional opinion that the results of the poll were genuine, accurate, and valid in describing the attitudes of adults of Illinois about the acceptability or nonacceptability of depictions of sexually explicit materials under certain circumstances. He described the survey as having reliability and that the survey was 99 percent repeatable within a confidence interval of 3½ percent.

The summary of the questions and results is included as an appendix to this opinion. Dr. Bell described the concept of "consensus," stating that approximately 75 percent of the population would have to agree on a proposition before one could say there was a consensus. In analyzing the results of the 1978 Illinois community standard survey, he found that there

was no consensus about whether it was acceptable or not acceptable to have depictions of sexually explicit materials provided under certain circumstances described in the questions. As the result of his expert analysis he concluded that there was no community standard regarding such depictions.

The prosecution objected to the expert analysis on the ground that there was no community standard shown by the survey and therefore that the testimony based on the inconclusive survey would invade the jury's province. The trial court ruled that both the survey evidence and the analysis invaded the province of the jury and that they were thus inadmissible. We conclude that the court thereby erred.

■■ ■ Clearly, a statewide "community standard" based upon public acceptance of material claimed to be obscene is an essential element of proof of the charge. *People v. Butler* (1971), 49 Ill. 2d 435, 438. See also *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, 2615.

Section 11—20(c)(4) of the Illinois Criminal Code provides, as relevant:

> "In any prosecution for an offense under this Section evidence shall be admissible to show: * * * (4) The degree, if any, of public acceptance of the material in this State; * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 11—20(c)(4).)

In view of the fact that no objections were made to the methodology or partiality of the survey, the statutory provision makes the evidence admissible in our view since the results show "the degree, if any, of the public acceptance of the material." (*Cf. People v. Thomas* (1976), 37 Ill. App. 3d 320, 325.) It is apparent from the survey that the questions were framed with reference to section 11—20(c)(4), since the members of the public are asked to state whether they feel it would be acceptable for the average adult in Illinois to see or buy sexually explicit materials. The questions and answers were relevant in that they showed that a majority of Illinois residents find depictions of "nudity and actual or pretended sexual activities" acceptable. This is relevant to the question of whether such depictions are "patently offensive" (for by definition acceptable materials are not offensive), and to the question whether such material appeals to "prurient interest." See *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General* (1966), 383 U.S. 413, 418, 16 L. Ed. 2d 1, 5, 86 S. Ct. 975, 977.

While, as the State points out, the survey is clearly not determinative in this case since it did not deal with the particular movies here, this does not prevent the survey from being relevant. The movies in question contained "nudity and actual or pretended sexual activities," defined as "sexual intercourse including all kinds of sexual variations." The survey

established that the majority of Illinois adults found it acceptable to view, buy or read such materials as contained in the movies. We note parenthetically that the judge admitted evidence of the type of movies shown in other adult book stores even though these were not the same but only similar films.

The State urges that, in any event, we should find that the refusal to admit the survey results was harmless error. We cannot agree. The survey results indicate a majority, albeit a very slim one, of Illinois residents consider it acceptable for adults to view sexually explicit materials.[1] This weighs heavily against a finding that the movies are patently offensive. Thus, it is impossible for us to hold that the exclusion of this evidence could not have reasonably affected the verdict. (*Cf. People v. Wolff* (1960), 19 Ill. 2d 318, 328.) Nor can we agree with the State's argument that there was other relevant testimony on the issue of the community standards. John Sauget, a nursing home administrator from Urbana, testified that he had been hired as an investigator to go to adult book stores in Urbana, Decatur, Springfield and Danville. He described the adult book stores at these locations, the people he saw in them, the 8 mm. films and the sexual content that he had observed in them, and the manner in which these films were available. He stated that there was no difference in the level of sexually explicit behavior in the films on trial and the films he saw in other places. Essentially, his testimony is that such material is available elsewhere in the State but not that such material was accepted.

■■ In contrast, the survey results are strong evidence that the community standards would accept or at least would not reject the portrayal of sexually explicit material in movies when the access to the movies is limited to adult viewers. In fact, survey evidence may be the only way to prove degrees of acceptability of a product or material, as distinct from its availability. The State does not have the burden of introducing any evidence as to what the statewide community standard is. (*People v. Ridens* (1972), 51 Ill. 2d 410, 415-16, *vac. & rem.* (1973), 413 U.S. 912, 37 L. Ed. 2d 1030, 93 S. Ct. 3046, *aff'd* (1974), 59 Ill. 2d 362.) But that cannot justify a court in denying the defendant the right to introduce the best evidence he can gather on this issue. Essentially the result of refusing the proffered evidence left the jurors with no way of knowing what the State standard might be. Particularly in this case, in which the jury *voir dire* showed that most of the jurors had lived all of their lives in the community of Rockford, did not read a paper from any other community within the State of Illinois and read few national magazines, it appears that the jurors would have little practical experience on which to base their opinion of what the statewide community standard might be. This

---

[1] Slightly less than a majority consider acceptable the conduct involved in this case, the showing of sexually explicit films in arcades.

raises the great danger that the jurors may have applied a personal standard rather than a statewide community standard. We conclude that the exclusion of the survey testimony was harmful and prejudicial error and requires that the case be remanded for a new trial.

The trial court, however, properly ruled that the commentary of the expert, exclusive of his foundation testimony, was inadmissible. The testimony of the expert that the survey results showed that there was no "consensus" in public opinion and therefore that there is no community standard by which to judge the obscenity of the material, is confusing for the jury. This comment is based on a social science concept which may be foreign to the jury. Further it focuses their attention on the nature and existence of the crime, perhaps thereby distracting them from a determination of guilt or innocence in the case at bar. Moreover, the survey results are clear and self-explanatory so that the jurors should have no difficulty in interpreting the results without expert aid.

Because we hold that the refusal to admit the survey constitutes reversible error, we need not reach the alternate question of the propriety of the sentence.

The judgment is therefore reversed and the cause remanded for a new trial in accordance with this opinion.

Reversed and remanded.

VAN DEUSEN and UNVERZAGT, JJ., concur.

## APPENDIX

### SUMMARY—ILLINOIS COMMUNITY STANDARDS SURVEY

QUESTION: Is it your opinion that in recent years the standards in Illinois have changed so that depictions of nudity and sexual activities in movies and publications available only to adults are now more acceptable or less acceptable?

More acceptable 60.5%; less acceptable 25.7%; neither 7.8%; don't know 4.4%; no answer 1.3%; other .2%.

QUESTION: Do you think it is acceptable or not acceptable in Illinois for the average adult to see any depiction of actual or pretended sexual activities shown in movies and publications that he or she wants to?

Acceptable 58.1%; not acceptable 33.2%; neither 5.2%; no answer 3.5%.

### GENERAL QUESTION

In your opinion, is it now all right or not all right in the State of Illinois for:

QUESTION: Adults who want to view them, to purchase magazines that depict nudity and actual or pretended sexual activities?

All right 63.1%; not all right 31.0%; neither 2.2%; no answer 3.6%.

QUESTION: Movie theaters, restricting attendance to adults only, to show films that depict nudity and actual or pretended sexual activities for adults who want to attend?

All right 59.2%; not all right 32.1%; neither 4.3%; no answer 4.4%.

QUESTION: Bookstores that restrict admittance to adults only to sell publications and movies depicting nudity and actual or pretended sexual activities for adults who want to go inside and purchase them?

All right 54.8%; not all right 37.3% neither 4.0%; no answer 3.9%.

QUESTION: Arcades that restrict admittance to adults only to show films that depict nudity and actual or pretended sexual activities?

All right 48.7%; not all right 42.1%; neither 3.5%; no answer 5.7%.

QUESTION: Adults who want to, in the privacy of their homes, to see movies and publications that depict nudity and actual or pretended sexual activities?

All right 67.4%; not all right 25.7%; neither 2.9%; no answer 4.0%.

QUESTION: We have used the phrases "nudity" and "sexual activities" in the interview. What we mean by these terms is total male and/or female nudity, and sexual intercourse including all kinds of sexual variations. Is that what you understood we meant, or did you think we meant something else?

Understood 93.4%; something else 3.0%; neither 1.8%; no answer 1.8%.