THE CITY OF NORTH CHICAGO, Plaintiff-Appellee, *v.* NORTH CHICAGO NEWS, INC., Defendant-Appellant.

Second District    No. 81-624

Opinion filed May 12, 1982.

Adam Bourgeois and Michael Null, both of Chicago, for appellant.

Richard J. Smith, of Sullivan, Smith, Hauser and Noonan, of Waukegan, for appellee.


JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Lake County permanently enjoining the defendant from selling or offering for sale 57 magazines which the trial court found were obscene. The judgment was the culmination of a lengthy procedural history which is detailed in full below as necessary background for the issues raised here.

On February 11, 1980, the plaintiff, City of North Chicago, filed a complaint in the circuit court of Lake County for temporary and permanent injunctions against G. L. Hobbies to enjoin it from continuing to sell obscene books, magazines and motion pictures, which practice had resulted in several prosecutions for violation of the North Chicago Obscenity Ordinance, thus constituting what the plaintiff alleged to be a nuisance for which there was no adequate remedy at law. North Chicago News, Inc., was later permitted to be substituted as defendant in an amended complaint filed on March 12, 1980. The defendant filed a motion to strike and dismiss on April 2, 1980, and plaintiff moved for a preliminary injunction against defendant on May 7, 1980. On May 14, 1980, the trial court reserved its ruling on the motion to dismiss and allowed plaintiff time to file a bill of particulars or a second amended complaint specifying the publications of which it complained. Plaintiff's second amended complaint, filed on May 29, 1980, specified nine magazines and two films which it alleged were sold or offered for sale by the defendant and were obscene. On June 17, 1980, the defendant moved to strike and dismiss the second amended complaint; this motion was denied on June 17, 1980. Defendant filed its answer to the second amended complaint, and plaintiff filed a "Request for Production of Documents" on August 12, 1980, seeking *inter alia* one copy of each magazine or booklet which pictorially depicted nude male or female homosexual activities, oral-genital heterosexual activity, or bestiality. Plaintiff then moved for summary judgment on October 27, 1980, enumerating the sale date, title and price of 13 specific works and two films which it alleged to be obscene and/or pornographic in violation of the city's ordinance. This motion was supported by five photographs of the interior of the defendant's premises showing

display racks holding apparently sexually explicit materials and various devices.

On December 1, 1980, the defendant filed its "Suggestions in Opposition to Plaintiff's Motion for Summary Judgment," which in essence alleged the attempted suppression of materials not previously judicially determined to be obscene was a violation of defendant's first amendment rights, and that the materials in question are not "patently offensive" since a majority of Illinois adults consider it acceptable to purchase and view sexually explicit materials. That allegation was based on the results of a survey noted in *People v. Nelson* (1980), 88 Ill. App. 3d 196; according to defendant's supporting affidavit, it had not yet been able to procure an affidavit from the author of that survey. Defendant also submitted a memorandum in support of its opposition to the summary judgment motion. Plaintiff filed a reply on January 14, 1981, and on that date at defendant's request the trial court set a hearing for February 9, 1981, on the issue of community standards. On January 15, 1981, plaintiff filed a "Notice to Produce at Trial" requesting the defendant produce at the February 9 hearing:

"One copy of each magazine offered for sale in January 1981 which:

1. * * * contains photographs of women and men engaging in oral sexual activities with other's genitalia.

2. * * * depicts oral sexual activity between members of the same sex.

3. * * * contains portrayals of ejaculation.

4. * * * contains portrayals of anal sexual relations.

5. * * * portray[s] women licking or eating male spermazoa [sic].

6. * * * contain[s] close-ups of male and female genital organs engaged in a sexual relationship."

Defendant did not comply with that notice to produce, ostensibly because the cause was not yet "at trial." At the February 9 hearing, in lieu of presenting testimony on the issue of community standards, the defendant filed a supplemental answer to the plaintiff's motion for summary judgment which was supported by the affidavits of Professor Roderick Bell and George Sullivan, which included numerous documentary and pictorial supporting exhibits. Bell had conducted the obscenity survey discussed in *People v. Nelson*, and Sullivan was a private investigator employed by the defendant to investigate the availability in other stores of materials similar to those offered for sale by the defendant. Plaintiff replied to defendant's supplemental answer which recognized the one remaining issue in the case was "whether the material offends community

standards," and that the trier of fact—either judge or jury—may decide this in determining whether the materials are obscene or not based on the evidence of the material itself. Plaintiff alleged that Bell's survey was inadequate to present a question of fact since it did not seek opinions with respect to "hardcore pornography" of the type offered for sale by the defendant.

On February 19, 1981, the trial court entered an order finding 23 specifically named items were obscene, permanently enjoining the defendant from selling the items by writ issued *instanter*, finding no just cause to delay enforcement or appeal of the injunction order, and noting that all remaining issues in the cause would be continued, to be taken up on notice of the parties. Defendant timely filed a notice of appeal from that order. This court granted defendant's substituted counsel's motion to voluntarily dismiss that appeal without prejudice on April 9, 1981, and, according to the defendant, "no issues relative to the February 9, 1981, injunctive order of Judge Strouse are raised by this appeal."

Thereafter, on March 11, 1981, plaintiff filed a petition for additional relief alleging that on February 28, March 2 and March 4, 1981, the defendant and/or through its employees sold six specified items which were "the same type of pornographic material which [the] court reviewed in detail on January 14 and February 19, 1981." The petition sought judicial review of the six items for a determination of their obscenity, and an injunction against sale of those items and "other materials substantially identical in content." In the alternative, the plaintiff requested that the court order the defendant to produce for examination by the court all magazines and paperback books presently available for sale, or that the defendant cease business for an appropriate period of time as a sanction. The six items specified in the petition were marked as exhibits Nos. 1 through 6 and filed with the court. On March 16, defendant filed an answer and a motion to strike and dismiss. The basis of the dismissal motion was that the petition raised issues which had already been determined by the trial court, and that the plaintiff was improperly trying to amend its second amended complaint with matters not previously alleged, and that the trial court had lost jurisdiction due to the filing of the defendant's notice of appeal.

On March 23, 1981, the defendant filed a "Request for Jury," as provided by section 63 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 63). On that same date, the trial court denied the defendant's motion to strike plaintiff's petition, ordered the defendant to produce items Nos. 1, 2 and 5 listed in the plaintiff's prior "Notice to Produce at Trial," noted the filing of the defendant's request for a jury, and deferred until April 3 consideration of its oral motion to strike plaintiff's allegations and prayers for relief re: abatement of the defendant's

bookstore as a nuisance. On April 3, defendant filed its "Motion to Reconsider" requesting the trial court to reconsider its order that the defendant produce the items described in the plaintiff's notice. The defendant's motion was based on the premise that since the instant petition alleged the sale of specific items on three occasions after January 1981, the items requested to be produced which were designated as having been offered for sale in January of 1981 were therefore irrelevant to the instant cause, and that the production request was patently overbroad. The trial court denied this motion on April 15, 1981, along with defendant's oral motion to have the matter certified for immediate appeal. Thereafter, the defendant produced 53 magazines on April 23, 1981; plaintiff was allowed two weeks to examine them.

On May 15, 1981, plaintiff filed another petition requesting the trial court to examine and declare obscene, and enjoin the sale of, the 53 magazines produced by the defendant; to find defendant in contempt of court for failing to produce a magazine called "California Cock" which obscenely depicted homosexual activities; and to frame a remedy which would prevent defendant's repeated violations of the North Chicago Obscenity Ordinance. Defendant's answer to the petition was filed on June 10, 1981, and its "Motion to Expedite Ruling" was filed on July 15, 1981. That motion was directed to the goal of obtaining a swift ruling on defendant's March 23 motion to dismiss, so that defendant would no longer be subjected to plaintiff's repeated petitions and motions to produce. Also, on July 15, 1981, defendant filed another "Motion to Strike and Dismiss" plaintiff's second amended complaint and all other petitions and pleadings filed by plaintiff which were not yet ruled upon by the trial court. A memorandum of law was also filed in support thereof. Plaintiff's reply and defendant's response thereto were also filed on July 15.

The trial court entered judgment on July 27, 1981, enjoining the sale of 57 specifically designated items which the court determined were obscene. The trial court denied all other relief requested. Defendant's timely notice of appeal was filed on August 13, 1981.

The defendant raised four issues for our consideration: (1) whether the court erred in ordering compliance with plaintiff's notice to produce; (2) whether the court erred in denying defendant's first motion to strike and dismiss and in subsequently ordering compliance with plaintiff's notice to produce prior to deciding the merits of the defendant's renewed motion to strike and dismiss; (3) whether the court erred in failing to permit a full adversary hearing on the issue of obscenity; (4) whether paragraphs 4 and 6 of the judgment order should be stricken.

Defendant's position is that the trial court's order that it produce the items encompassed within categories 1, 2, and 5 of the plaintiff's "Motion to Produce at Trial" amounted to a seizure in violation of the defendant's

constitutional right to be free from unreasonable search and seizure. The defendant contends its only alternative to its involuntary surrender of materials protected by the first amendment was to be held in contempt of court. Further, defendant argues the only method available to parties who wish to obtain materials believed to be obscene is either the purchase of the materials or the seizure pursuant to a valid search warrant citing, *inter alia, People v. Kimmel* (1966), 34 Ill. 2d 578; *Marcus v. Search Warrant of Property* (1961), 367 U.S. 717, 6 L. Ed. 2d 1127, 81 S. Ct. 1708; *A Quantity of Copies of Books v. Kansas* (1964), 378 U.S. 205, 12 L. Ed. 2d 809, 84 S. Ct. 1723.

Plaintiff counters that there was no seizure of the materials, that the argument made by the defendant has previously been rejected in *Monier v. Chamberlain* (1964), 31 Ill. 2d 400, that the defendant had the option of seeking a protective order or a clarification of the materials required to be produced pursuant to the court's order, and that the materials requested to be produced were relevant to the proceedings.

We agree that this issue has been previously resolved to defendant's disadvantage in *Monier*. That court held that an order directing the defendant to produce certain documents relative to the personal injury action at bar did not present a substantial or debatable constitutional issue so as to give that court jurisdiction of the direct appeal thereto. Consequently, the cause was ultimately transferred to the appellate court. The *Monier* court had determined that it lacked jurisdiction in that cause because "the boundaries of the area constitutionally protected against unreasonable search and seizure were fixed at the limits of relevance." (31 Ill. 2d 400, 402.) It noted that its jurisdiction obtained only in cases directly appealed from orders of the trial court which required production of books, documents, or objects that were not pertinent, material to the issue, or tended to prove the issues.

Thus, the inquiry in the instant cause was whether the items sought were relevant. Most certainly they were; plaintiff alleged in its March 11, 1981, petition that the defendant sold obscene magazines portraying various explicit sexual acts and that it was the same type of pornographic material previously determined by the court to be obscene. In its answer, defendant denied it sells or has sold pornographic or obscene materials, that none of the materials reviewed by the court were obscene, and that it had not violated the North Chicago Obscenity Ordinance. Defendant's denial of the plaintiff's allegations brings the items "offered for sale in January of 1981" within the realm of relevancy since they relate to the issue of whether there was a continuing violation of the ordinance. Notably, defendant has not argued—nor does the record provide this court with any way of knowing—that the materials offered for sale in January 1981, were not also offered for sale in February and March. Further, defendant's assertion that its alternative to compliance with the

production order was to be held in contempt of court is correct and, in fact, was a viable alternative to producing the documents. It has been held that a defendant's action of subjecting itself to a contempt citation is a permissible method of testing a pretrial discovery order. *(Bicek v. Quitter* (1976), 38 Ill. App. 3d 1027, 1029; *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 189.) In light of defendant's apparently good-faith belief that the court's order was unconstitutional, defendant may have been well advised to choose that alternative.

■■■ Because the trial court is vested with wide discretionary power in pretrial discovery matters, defendant here bears the burden of showing there has been a clear abuse in order to warrant modification or reversal by a reviewing court. *(Bee Chemical Co. v. Service Coatings, Inc.* (1969), 116 Ill. App. 2d 217, 223.) The defendant has neither provided this court with a report of proceedings of March 23, 1981, at which time the trial court entered its order to produce, nor has it shown there was a clear abuse of discretion. Furthermore, defendant has presented no argument which persuades us that civil discovery procedures should be subject to the type of constitutional analysis utilized in unreasonable search and seizure criminal cases. Consequently, no vacation or reversal of the court's production order is warranted.

Next, defendant argues that if the trial court had properly sustained its motion to strike and dismiss before granting in part the plaintiff's motion to produce, the 53 magazines which the defendant produced pursuant to court order would never have been before the trial court and, therefore, their sale would never have been enjoined. In essence, the defendant argues that the trial court had no right to declare the 53 magazines produced to be obscene because those magazines were not properly brought before it. Defendant asserts that had either its June 17, 1980, or its oral March 23, 1981, motion to strike and dismiss been properly and timely granted, there would have been no basis on which to order production of the 53 magazines. In lieu of authority in support of its argument in this regard, defendant referred this court to its legal memoranda submitted below which it urges supports its contention that obscenity may not be enjoined under a statutory or common law theory of public nuisance. See, *e.g., People v. Goldman* (1972), 7 Ill. App. 3d 253; *City of Chicago v. Festival Theatre Corp.* (1980), 88 Ill. App. 3d 216.

Plaintiff counters that the trial court's production order was based additionally on its jurisdiction to declare the magazines obscene and enjoin their further sale by the defendant. Plaintiff cites *In re Halkin* (D.C. Cir. 1979), 598 F.2d 176, for the proposition that the discovery rules place no limitations on what a party may do with materials obtained in discovery. In the instant cause, of course, the plaintiff used the magazines as the basis for a petition seeking to have them declared obscene.

■■■ Motions to strike and dismiss are brought either pursuant to section

45 or section 48 of the Illinois Civil Practice Act, and the grant or denial of a motion to dismiss is generally within the sound discretion of the trial court. (Ill. Rev. Stat. 1979, ch. 110, pars. 45 and 48.) Further, a motion to dismiss should be denied if a good cause of action is stated, although not the one intended by the plaintiff. (*Great Atlantic & Pacific Tea Co., Inc. v. La Salle National Bank* (1979), 77 Ill. App. 3d 478.) In considering a motion to strike or dismiss, the complaint must be considered as a whole and allegations should not be stricken nor the complaint dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. (*Saldana v. American Mutual Corp.* (1981), 97 Ill. App. 3d 334, 336.) During the course of these proceedings, the defendant filed four written motions to strike and dismiss (April 2, 1980; June 17, 1980; March 16, 1981; July 15, 1981), and made one oral request for same (March 23, 1981). Considering only the two defendant specifically notes in its brief, June 17 and March 23, the June motion was addressed to the sufficiency at law of plaintiff's second amended complaint upon which partial relief was granted on motion for summary judgment in the trial court's order of February 19, 1981, which order is not challenged in this appeal. The March 23 motion was made orally and, inasmuch as this court has not been provided with a transcript of that proceeding, we have no way of knowing whether in fact its July 15 written motion to dismiss "formalized" its oral motion made almost four months earlier. In that four-month interim, plaintiff filed its May 15 petition alleging the 53 items produced by the defendant were obscene, and defendant filed its answer thereto on June 10.

We observe, contrary to defendant's memoranda submitted to the court below, that the *Festival Theatre Corp.* decision specifically expressed no opinion on the question of whether the sale and distribution of obscene literature and films may be enjoined as a public nuisance at common law. (88 Ill. App. 3d 216, 226.) Assuming, *arguendo*, however, that defendant is correct in its contention that the operation of the bookstore may not be enjoined, the pleadings nevertheless stated a cause of action in that they sought to have the court declare specific materials obscene and to have further sale of those items enjoined. We note here, also, that the harm allegedly caused by the trial court's failure to dismiss—that the 53 magazines would not have been before the court and would not have been found obscene save for that error—is not correct. The items produced by the defendant in compliance with the court's order were for sale to the general public in its store, and could readily have been obtained by the plaintiff if necessary in order to support its petitions. The defendant has failed to show the trial court abused its discretion in denying the motions to dismiss, and no reversible error is evident.

■■ Next, the defendant asserts the court erred in determining in a "summary fashion" that the magazines before it were obscene, and contends that no permanent injunction may issue until there has been a full adversary hearing. Defendant cites no relevant authority in support of its contention, nor does the record reflect the defendant wished to present any evidence prior to the trial court's determination on July 15 that the publications were obscene. Plaintiff correctly points out that defendant had an opportunity on February 9, 1981, to present evidence on the issue of community standards, which was relevant to the issue of whether the materials in question were patently offensive. In lieu of testimony, defendant chose instead at that time to offer a supplemental answer to plaintiff's motion for summary judgment, supporting same with affidavits from Dr. Bell concerning the Illinois survey discussed in *People v. Nelson* (1980), 88 Ill. App. 3d 196, and from Mr. Sullivan who had purchased sexually explicit publications in various stores in the area. Although defendant did make a request for a jury, the record fails to show when or even if that motion was ruled upon, and if not, why not. Further, the defendant did not interpose any objection during the trial court's allegedly summary determination that the publications were obscene. The granting of a jury trial in equity cases is discretionary with the trial court (*Kjellesvik v. Shannon* (1976), 41 Ill. App. 3d 674) and, if a jury is allowed, its verdict is advisory only, and binds neither the trial court nor the reviewing court. (*Ray v. Winter* (1976), 39 Ill. App. 3d 567, 575-76, *rev'd on other grounds* (1977), 67 Ill. 2d 296.) The record is clear that the court reviewed each of the publications which it declared obscene, and that in making its determination, the guidelines announced in *Miller* and the statewide community standard mandated in *People v. Butler* were applied. (*Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607; *People v. Butler* (1971), 49 Ill. 2d 435.) No reversible error is evident as to this issue.

Lastly, defendant requests that paragraphs 4 and 6 of the trial court's order be stricken because they are arbitrary declarations and unproven allegations. Those paragraphs are as follows:

"4. That there is a continuing violation of the North Chicago Obscenity Ordinance.

* * *

6. That Exhibits 100 through 150 were offered for sale by the defendant and the six magazines hereinafter enjoined, previously brought to the court's attention, were sold by the defendant."

Defendant wishes to have these paragraphs stricken since its landlord, largely on the basis of the judgment in this case, has filed a forcible entry and detainer action to evict it from the premises for violation of its lease which prohibits unlawful or immoral practices. Plaintiff argues the

judgment should remain as it is, since the defendant itself admitted in one of its memoranda that magazines "either sold or offered for sale by the defendant" were used by plaintiff to substantiate its complaint for injunctive relief. Plaintiff also argues the defendant failed to object to the inclusion in the judgment order of the six magazines which were not numbered among the 53 magazines actually produced by the defendant, the likely inference being that defendant has waived any error in that regard.

■■ Our review of the record substantially supports the trial court's findings. Clearly, the trial court's finding is correct that the 53 magazines produced by the defendant were, in fact, offered for sale by it since the production order so described the items to be produced. Further, the record supports the finding that there was a continuing violation of the ordinance. The trial court's February 19, 1981, judgment found 24 publications offered for sale by the defendant during the period November 1, 1979, to May 1, 1980, to be obscene, and its subsequent order entered on July 27, 1981, declared, in pertinent part, that the 53 magazines produced by the defendant as being "offered for sale in January 1981" were also obscene. Consequently, the record supports the finding that the defendant sold obscene magazines during at least two time periods approximately nine months apart; thus, the phrase "continuing violation" is not without support in the record. With regard to the six publications previously brought to the trial court's attention, four of them were alleged to have been sold by the defendant on February 28; the other two were alleged to have been sold by employees of the defendant who were arrested on March 2 and March 4, 1981. In its answer to plaintiff's petition concerning those six publications, defendant admitted the arrest of its employees occurred, but denied that it sells obscene materials, or that it had sold obscene materials on those two dates. In an earlier answer, defendant had admitted that its business consists solely of the sale of literature, magazines and motion pictures, and that it operates its business by and through employees and agents who actually sell the literature, magazines and movies.

In our view, the trial court's finding that the defendant sold the six magazines is supported by the record and need not be stricken.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

NASH and REINHARD, JJ., concur.