THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAGE BOOKS, INC., d/b/a Bachelor's Library Adult Bookstore, Defendant-Appellant.

Second District   No. 2—91—0243

Opinion filed September 25, 1992.—Rehearing denied November 9, 1992.

J. Steven Beckett, of Beckett & Crewell, of Champaign (Roger B. Webber, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (John Kinsella, Assistant State's Attorney, and William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Page Books, Inc., was charged by verified complaint in the circuit court of Du Page County with two counts of obscenity (Ill. Rev. Stat. 1989, ch. 38, par. 11—20(a)(1)). Following a jury trial, defendant was found guilty of both counts and sentenced to a fine of $1,000 plus costs on each count.

Defendant raises the following issues on appeal: (1) whether the use of an Illinois Pattern Jury Instructions (IPI) instruction referring to children in the context of community standards constituted prejudicial error; (2) whether the exclusion of certain community standards evidence violated due process; (3) whether the inclusion of multiple communicative items in a single count combined with a general verdict form created an impermissible prior restraint; and (4) whether the complaint failed to properly charge an offense because it did not allege that the various materials were obscene.

The following facts are relevant to the issues raised on appeal. On November 15, 1989, pursuant to a warrant, authorities searched a bookstore owned and operated by defendant. A total of 26 magazines and five videotapes were seized during the search. Twenty-five of the magazines and three of the videos were introduced as evidence at defendant's trial along with three magazines purchased by an investigator prior to the issuance of the search warrant.

Dr. Joseph Scott, a professor in the sociology department at Ohio State University, testified on behalf of defendant. Dr. Scott was hired by defendant to conduct a survey of 500 adults in Illinois concerning their views of and attitudes on sexually explicit materials. The 500 adults questioned were a representative cross-section of Illinois. The survey was prepared, conducted and evaluated in accordance with state-of-the-art procedures.

The survey consisted of numerous background and general information questions. Additionally, there were seven questions that addressed contemporary community standards concerning explicit sexual material. The persons surveyed were told prior to answering the seven questions that "[t]he next few questions deal with adult x-rated videos and sexually explicit magazines. These videos and magazines may have little or no plot. Their contents are primarily graphic depictions of nudity and sex, showing a variety of actual sexual activities including: vaginal intercourse, ejaculation, bondage, oral sex, masturbation, anal sex, use of vibrators, lesbian sex, group sex and variations of these by adult performers. No minors are involved, and these materials can only be purchased, rented or viewed by adults who desire them."

Question number 16 asked whether the "portrayal of such sexual conduct, in adult videos and magazines, available only to adults, has become *more* or *less* acceptable in recent years in Illinois?" (Emphasis in original.) Question number 20 inquired whether it is "acceptable or not in Illinois for these neighborhood video stores to rent or sell such X-rated videos to adults?" The State objected to

questions 16 and 20 and the responses thereto. The court ruled that questions 16 and 20 were inadmissible, and it barred Dr. Scott from testifying about either question. Dr. Scott did testify that based on the survey results generally at least 50% of every subcategory of people surveyed found such sexually explicit materials to be acceptable or tolerated.

The State filed a motion *in limine* seeking to bar evidence "relating to the availability of 'x-rated' or 'adult' video tapes in certain, yet undisclosed video stores *** for the purpose of establishing 'acceptability' within the contemporary adult community." The trial court granted the motion and barred any evidence pertaining to a survey conducted by Larry Adelsberger of various "adult bookstores" and "family video stores." The parties stipulated as an offer of proof that if called to testify Adelsberger would testify to the information contained in a written report prepared by him. The report states that Adelsberger visited 14 adult book stores and 14 family video stores throughout Illinois in August 1990. Regarding the adult bookstores, he made observations concerning the outside of the stores, the customers, the printed materials, video tapes and marital aids. He also purchased printed materials and videos from various stores that he considered representative of the materials offered for sale. As to the family video stores, he observed the adult video section and interviewed employees of the various stores concerning the inventory of adult videos and the frequency of their rental. Adelsberger would also testify as to various magazines he purchased from other bookstores in Illinois as representative of what type of sexual magazines are available. Defendant offered the report and Adelsberger's testimony as evidence of the degree of acceptability of this type of material in Illinois.

The trial court also barred admission of the information, docket sheet and signed verdict forms in an obscenity prosecution in the circuit court of Champaign County. The jury returned a verdict of not guilty in that case in October 1990.

The jury received the following instruction, among others, in this case:

> "To sustain the charge of obscenity, the State must prove the following propositions:
>
> First that the defendant offered or agreed to sell or provide an obscene magazine; and
>
> Second that the defendant then knew the nature or content of the magazine or recklessly failed to exercise reason-

able inspection which would have disclosed the nature or content of the magazine.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

The State also tendered Illinois Pattern Jury Instructions, Criminal, No. 9.57 (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d No. 9.57 (Supp. 1989)), which reads in pertinent part:

"Obscenity is judged with reference to the standards of adults, except that it is judged with reference to children or other specially susceptible audiences if it appears from the character of the material or the circumstances of its dissemination to be specially designed for or directed to such an audience."

Defendant objected to this portion of the instruction and argued that the reference to children should be deleted as there was no evidence that the materials at issue involved children or were directed to children. Defendant offered a modified version of IPI Criminal 2d No. 9.57 (Supp. 1989) wherein it deleted the reference to children and added language referring to homosexuals as a specially susceptible audience.

The court, over defendant's objection, gave general verdict forms of guilty and not guilty on each count as to the magazines and the videos. Defendant tendered special verdict forms that would have required the jury to record a finding of obscenity as to each magazine and each video. The court overruled the objection to the general verdict forms and refused to submit the special verdict forms to the jury.

The jury returned a verdict of guilty on the count pertaining to the magazines and a guilty verdict on the video count. Following the denial of its post-trial motion, defendant filed this timely appeal.

We first consider defendant's prior restraint argument as that issue is dispositive of this appeal. Defendant contends that the clustering of the three videos into one count and the 25 magazines into a second count, combined with the submission of general verdict forms as to each count, created an impermissible prior restraint. Specifically, defendant argues that the jury could have returned

guilty verdicts based upon its finding that only one of the items listed in each count was obscene and that it is impossible to discern which magazines or videos were found to be obscene. Thus, defendant is compelled to curtail its continued dissemination of all of the magazines and videos, or other similar items, for fear that those materials may have been determined to be obscene by the jury.

◾ A prior restraint occurs when, without any judicial determination, a communication is characterized as obscene and suffers a detriment to its further communication. (*People v. Hall* (1986), 143 Ill. App. 3d 766, 778, citing *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 43 L. Ed. 2d 448, 95 S. Ct. 1239.) Under the fourteenth amendment, a State is not free to adopt whatever procedures it pleases for addressing obscenity without regard to the possible consequences for constitutionally protected speech. (*Marcus v. Search Warrant of Property* (1961), 367 U.S. 717, 731, 6 L. Ed. 2d 1127, 1136, 81 S. Ct. 1708, 1716.) The regulation of obscenity must conform to procedures that ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity by a dim and uncertain line. (*Bantam Books, Inc. v. Sullivan* (1963), 372 U.S. 58, 66, 9 L. Ed. 2d 584, 590, 83 S. Ct. 631, 637.) Moreover, because only considerations of the greatest urgency can justify restrictions on speech, and because the validity of a restraint on speech in each case depends on careful analysis of the particular circumstances, the procedures by which the facts are adjudicated are of special importance, and the validity of the restraint may turn on the safeguards which they afford. (*Speiser v. Randall* (1958), 357 U.S. 513, 521, 2 L. Ed. 2d 1460, 1469-70, 78 S. Ct. 1332, 1339.) Only a judicial determination in an adversary proceeding ensures the sensitivity to freedom of expression sufficient to impose a valid final restraint. *Freedman v. Maryland* (1965), 380 U.S. 51, 58, 13 L. Ed. 2d 649, 654, 85 S. Ct. 734, 739.

◾ This case differs from the typical prior restraint scenario in that defendant was afforded a full-scale trial by jury on the charges that the various magazines and videos were obscene. Nevertheless, we believe the procedures employed here resulted in an improper final restraint on defendant's first amendment rights. The State elected to charge all 25 magazines in a single count. The jury, in turn, was instructed that if it found "a magazine" to be obscene it could find defendant guilty. The court also submitted a general verdict form which limited the jury to either finding defendant guilty or not guilty. The jury was not required to make an individualized determination concerning the obscenity of each magazine. Because

the jury returned a general verdict of guilty, we cannot determine, nor can defendant, which of the 25 magazines were in fact obscene. It is possible that one or more of the magazines were determined to be obscene or that all of them were found obscene. It is this ultimate uncertainty which renders the procedures followed here constitutionally defective.

The State seized and detained defendant's publications and subjected them to judicial scrutiny. Yet, the seizure was not followed by any decisive determination of obscenity as to any individual magazine or video. While such a process may not constitute a prior restraint in the classic sense of that term, it has essentially similar constitutional ramifications. Defendant is left to speculate as to which magazines were obscene and is therefore without a concrete determination of obscenity. An obvious potential exists that the scatter gun impact of such a general verdict might unjustifiably operate to publicly taint constitutionally protected materials which were not the actual object of the jury's finding.

Parenthetically we note that the constitutional deficiencies inherent in the charging procedure in question here might become even more troublesome in those cases in which the sufficiency of the evidence of obscenity is challenged on appeal. It is not the function of a reviewing court to rummage through a potentially unlimited supply of suspect materials in search of an unidentified item or items which might be sufficient to sustain a general verdict of guilty. There can be no certainty that such a process would necessarily disclose the same item(s) which led to the jury's determination. Although a reviewing court can reverse a conviction by concluding that allegedly obscene materials are not obscene, it cannot declare materials obscene where the jury found otherwise. Only the trier of fact may render the initial determination, and that determination must be sufficiently particularized to enable subsequent review. The charging of multiple magazines in one count, instructing the jury that a guilty verdict should be returned if any magazine is obscene and the giving of a general verdict form combined to render the verdict in this case imprecise. Such imprecision cannot be tolerated when freedom of expression is at issue.

This opinion is significantly based upon considerations uniquely applicable to the protection of freedom of expression. Although we have concluded that this particular charging procedure, when utilized in conjunction with general verdict forms, is inadequate to separate protected from unprotected expression, our opinion should not be misconstrued as criticizing the practice of joining closely re-

lated acts in a single count of the charging instrument in other types of prosecutions. Considering the options available to the State to modify its approach to accommodate the constitutional concerns expressed herein, it seems unlikely that this requirement will create any significant impediment to the effective prosecution of obscenity offenses.

Because defendant failed to receive a precise judicial determination as to the obscenity of the various magazines and videos on trial, it was denied the full protections of due process provided by the fourteenth amendment. As such, we are compelled to reverse defendant's conviction and remand for a new trial. In doing so, we will consider the remaining issues raised in defendant's appeal as they are likely to recur on remand.

The first of the remaining issues is whether the use of IPI Criminal 2d No. 9.57 (Supp. 1989), which referred to children, constituted prejudicial error. Defendant contends that it was error in this case to include a reference to children in the instruction on community standards because to do so allowed the jury to consider children as part of the relevant community. IPI Criminal 2d No. 9.57 (Supp. 1989) defines obscenity and states:

"Any [(material) (performance)] is obscene if

■ the average person, applying contemporary adult community standards, would find that the work, taken as a whole, appeals to the prurient interest; and

■ the average person, applying contemporary adult community standards, would find that it depicts or describes, in a patently offensive way, ultimate sexual acts or sadomasochistic sexual acts, whether normal or perverted, actual or simulated, or masturbation, excretory functions or lewd exhibition of the genitals; and

■ a reasonable person, taking the [(material) (performance)] as a whole, would find no serious literary, artistic, political or scientific value.

[Obscenity is judged with reference to the standards of adults, except that it is judged with reference to children or other specially susceptible audiences if it appears from the character of the material or the circumstances of its dissemination to be specially designed for or directed to such an audience.]

In determining how any [(material) (performance)] would be viewed by the average person, you are to consider how it would be viewed by ordinary adults in the whole State of Illi-

nois rather than by the people in any single city or town or region within the State." IPI Criminal 2d No. 9.57 (Supp. 1989).

Our obscenity statute specifically sets forth when children can be considered part of the community. (*People v. Hall* (1986), 143 Ill. App. 3d 766, 780.) Section 11—20(c) states that "[o]bscenity shall be judged with reference to ordinary adults, except that it shall be judged with reference to children or other specially susceptible audiences if it appears from the character of the material or the circumstances of its dissemination to be specially designed for or directed to such an audience." (Ill. Rev. Stat. 1989, ch. 38, par. 11—20(c).) Clearly, IPI Criminal 2d No. 9.57 (Supp. 1989) reflects the adult community standard and its children or susceptible audience exception as set forth in section 11—20(c).

It is evident that the portion of IPI Criminal 2d No. 9.57 (Supp. 1989) concerning children and specially susceptible audiences was intended to be an optional part of the instruction as it is contained in brackets. Furthermore, the committee notes to IPI Criminal 2d No. 9.57 instruct to "[u]se applicable bracketed material." (IPI Criminal 2d No. 9.57, Committee Notes (Supp. 1989).) This further suggests that the bracketed material is optional. The fact that the bracketed material is optional indicates that it was not intended to be used in every instance in which a jury is instructed on the definition of obscenity.

In the present case, defendant objected to the bracketed portion of the instruction and argued that the reference to children should be deleted because there was no evidence that the materials at issue were directed toward children.

■ We conclude that it was error for the trial court to have given the challenged portion of the instruction over objection without first making a finding that some evidence existed from which the jury might find that the material was specially designed for or directed to an audience of children. Any contrary holding would be tantamount to an approval of the optional instruction in all obscenity cases without reference to the evidence.

Defendant next contends that the exclusion of certain community standards evidence was a violation of due process. First, defendant argues that the trial court erred in ruling that two questions and their responses from Dr. Scott's survey were inadmissible as evidence of community standards. The first question asked whether, in the interviewee's opinion, the portrayal of sexual conduct in adult videos and magazines had become more or less accept-

able in Illinois in recent years. The second question inquired as to the acceptability of "neighborhood video stores" making x-rated videos available to adults.

Our research reveals one case addressing the admissibility of community standards survey results in an obscenity prosecution. In *People v. Nelson* (1980), 88 Ill. App. 3d 196, this court held that it was error for the trial court to have excluded a survey of a sample of the adult population regarding the acceptability of depictions of sexually explicit materials. (*Nelson*, 88 Ill. App. 3d at 197-200.) In so holding, we relied in part on section 11—20(c)(4) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 11—20(c)(4)), which provided that evidence showing the degree of public acceptance of sexually explicit material was admissible. (*Nelson*, 88 Ill. App. 3d at 198.) We further determined the survey questions and answers to be relevant because they showed that a majority of Illinois residents found depictions of nudity and actual or pretended sexual activities acceptable. (*Nelson*, 88 Ill. App. 3d at 198.) Such questions and answers are relevant to the questions of whether materials are patently offensive and whether such material appeals to prurient interest. (*Nelson*, 88 Ill. App. 3d at 198.) Lastly, we concluded that survey evidence may be the only way to prove degrees of acceptability of sexually explicit material as compared to its availability. *Nelson*, 88 Ill. App. 3d at 199.

■ While we held in *Nelson* that surveys regarding the acceptability of sexually explicit materials cannot be ruled inadmissible *per se*, we did not hold them to be admissible in all cases or *in toto*. In the present case, the trial court admitted all but two questions from the proferred survey. Question 16 of the survey asked, "In your opinion, has the portrayal of such sexual conduct, in adult videos and magazines, available only to adults, become *more* or *less* acceptable in recent years in Illinois?" (Emphasis in original.) Such a question, while arguably showing a trend in acceptability of sexually explicit materials, does not establish whether particular materials are presently acceptable. For instance, certain sexually explicit materials may be more acceptable today than a few years ago but may still remain unacceptable by a majority of the adult population. The issue in an obscenity prosecution is present day acceptance, not whether materials are more acceptable than they once were. Thus, the trial court properly excluded question 16.

Question 20 stated that "[m]any neighborhood video stores in Illinois have x-rated videos as described" and asked whether it is or is not acceptable "in Illinois for these neighborhood video stores to

rent or sell such x-rated videos to adults requesting such material." This question is clearly premised upon the assertion that many neighborhood video stores have sexually explicit videos. Such a premise is unproven, however. As such, it unfairly contaminates the results of question 20 in that it suggests that such videos are acceptable because they are marketed in *many neighborhood* stores. The use of the word "many" suggests widespread dissemination. The word "neighborhood" when contrasted with "adult video" or "adult bookstore" has a more familial connotation. Used in conjunction, and unsupported by any evidence, these words create a strong impression to the person responding to the survey that there is a degree of acceptability to the videos.

We also perceive an additional problem with admitting question 20 into evidence. Because it contains the unsupported assertion that many neighborhood video stores stock sexually explicit videos, there is a significant risk that the jury would conclude that many neighborhood stores do in fact carry such videos. This could have a direct impact on the jury's determination of acceptability of the materials at issue in the trial. Absent some evidentiary basis to support such an assertion, the question was properly excluded. Accordingly, there was no clear abuse of discretion in excluding questions 16 and 20.

. Furthermore, a trial court's ruling concerning the relevance and admissibility of evidence will not be reversed unless, if an abuse of discretion, it results in a manifest prejudice to the defendant. (*People v. Hayes* (1990), 139 Ill. 2d 89, 130.) Even if the trial court erred in excluding questions 16 and 20, any error was harmless in light of the additional evidence presented from the survey relevant to the issue of community standards and acceptability. For example, the survey asked whether the portrayal of sexual conduct is acceptable in Illinois and whether it is acceptable that sexually explicit materials should be sold or rented to adults. Moreover, the degree of acceptability indicated by the admitted questions was comparable to or slightly greater than the excluded questions. Consequently, under these circumstances, it was not manifestly prejudicial error to have excluded questions 16 and 20 from the trial.

Second, defendant maintains that it was error to exclude testimony concerning Larry Adelsberger's visits to various adult bookstores and neighborhood video stores because such information constituted evidence of acceptability. Again, we will not reverse the trial court's ruling in this regard absent a clear abuse of discretion resulting in manifest prejudice to defendant. (See *Hayes*, 139 Ill. 2d

at 130.) In reviewing the discretionary ruling of the district court excluding admission of similar materials available on newstands, the United States Supreme Court held that while a defendant in an obscenity prosecution is entitled to an opportunity to present relevant, competent evidence bearing on the issues at trial the mere availability of similar materials in the community does not automatically make them admissible as tending to prove the nonobscenity of the materials which the defendant is charged with disseminating. (*Hamling v. United States* (1974), 418 U.S. 87, 125, 41 L. Ed. 2d 590, 625, 94 S. Ct. 2887, 2911-12.) The "[m]ere availability of similar material by itself means nothing more than that other persons are engaged in similar activities." *Hamling,* 418 U.S. at 126, 41 L. Ed. 2d at 626, 94 S. Ct. at 2912.

■ The fact that other similar magazines and videos are available does not bear on the question of acceptability of those materials by the community. If that were the case, the dissemination of such materials could hardly be subject to prosecution as they would be necessarily acceptable by virtue of their availability. The fact that Adelsberger observed persons purchasing these magazines or renting videos does not substantially alter the result. Merely because certain individuals may choose to partake in the availability of sexually explicit materials does not establish the acceptability by the community of such materials. Again, the mere purchase of similar materials alone means nothing more than other persons are engaged in similar activities. Absent some concrete indication that the purchasers or renters of such materials represent a significant portion of the community, evidence of the acquisition of such materials does not bear on the question of acceptability. As such, the exclusion of Adelsberger's testimony and his survey was not a clear abuse of discretion.

Third, defendant maintains that the trial court erred in refusing to take judicial notice of certain portions of a prior obscenity prosecution in Champaign County wherein the defendant was found not guilty by jury verdict. Defendant argues that because 10 of the magazines charged in the Champaign County case have identical titles as 10 of the magazines at issue here the not guilty verdict is strong evidence of acceptability of the magazines charged here.

■ Defendant cites no case directly addressing this issue, nor does our research reveal any. Defendant's contention must fail for several reasons. First, it would be improper to take judicial notice of the findings of the jury in the Champaign County case because the parties in that proceeding are not the same as in the present

case. (See *People v. Free* (1986), 112 Ill. 2d 154, 165-66.) Second, there is no evidence on this record that the magazines at issue in the Champaign County prosecution are the same as any of those in this case. While some of the titles are identical, there is no indication that they are in fact the same magazines or that they contain similar material. Third, we have no way of knowing the jury's basis in the Champaign County case for its not guilty verdicts. It may be that the jury found an element other than obscenity of the materials to be lacking in the evidence. At the very least, it cannot be conclusively said that the basis of the not guilty verdicts was the nonobscenity of the 10 magazines. Thus, even if we concluded that it would be proper to introduce the record from the Champaign County prosecution as submitted by defendant, it would do nothing more than confuse the issues before the jury rather than aid the jury in arriving at its verdict. For all of the foregoing reasons, we hold that the trial court's refusal to take judicial notice of the Champaign County record and admit it into evidence was not an abuse of discretion.

■ Finally, defendant contends that while none of the excluded items of evidence alone would be dispositive of the issue of community standards or the acceptability of the materials, the items are "strong evidence" of the degree of acceptability of such materials and comparable materials in Illinois. Because we have already held that such evidence was properly excluded from the trial, we necessarily reject this argument. Whether certain evidence is potentially dispositive or merely "strong evidence" is of no consequence if the evidence is otherwise inadmissible.

We need not address defendant's final argument that the complaint was deficient for not including an allegation of obscenity as defendant has conceded in its reply brief that such deficiency did not render the complaint defective.

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County and remand this cause for a new trial.

Reversed and remanded.

BOWMAN and NICKELS, JJ., concur.