THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RANDALL ANTHONY BATES, Defendant-Appellant.

Second District (1st Division)   No. 75-101

Opinion filed May 6, 1976.—Rehearing denied July 16, 1976.

J. Steven Beckett, of Reno, O'Byrne & Kepley, of Champaign, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (Edward N. Morris, Martin P. Moltz, and Christine Drucker, all of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

In a six-count information, the defendant, Randall Anthony Bates, was charged with the offense of obscenity (Ill. Rev. Stat. 1973, ch. 38, par. 11—20). The gravamen of each count was that on December 29, 1973, the defendant had made available for viewing by the general public a certain obscene film in Rockford, Illinois. Upon return of the jury's verdict of guilty on each count, the trial court entered judgments of guilty and fined defendant $1000 on each count for a total fine of $6000. Defendant raises five issues for review: (1) whether the search warrant procedure followed in this case was constitutionally defective; (2) whether the Illinois obscenity statute is unconstitutional and void for vagueness; (3) whether the construction of the Illinois obscenity statute by the Illinois Supreme Court in *People v. Ridens* (1974), 59 Ill. 2d 362, 321 N.E.2d 264, may be applied retroactively to the defendant; (4) whether the trial court erred in failing to grant defendant's motion for a mistrial which was grounded upon certain evidentiary rulings made by the court; and (5) whether the trial court exceeded its authority in imposing a $1000 fine for each of the six counts upon which defendant was convicted, rather than imposing only one fine.

The facts necessary for review on the validity of the search warrant procedure follow. On December 29, 1973, Officer Joseph Davis of the Rockford Police Department filed a complaint for search warrant. The complaint stated that articles which "have been used in the commission of, or which may constitute evidence of the offense of obscenity" were located in a building at 320-322 East State Street, Rockford, Illinois. The articles were described as "Certain moving films, approximately fourteen (14) in number, each being contained in a separate machine which is mounted upon a wooden stand." The officer further stated in the complaint that he had probable cause to believe that the complaint was true, based upon the attached affidavit. In the affidavit Officer Davis stated that on November 19, 1973, he entered an adult book store at 321 East State Street, Rockford, Illinois, to view films on exhibit. He observed 14 coin-operated film viewing machines in a room on the east side of the building all of which were mounted on wooden stands. The affidavit further recited that Officer Davis viewed the films in several machines and found the films to explicitly depict sexual acts, including but not limited to certain acts which were therein described. It was also stated that since November 19, 1973, the machines had been relocated to 320-322 East State Street, Rockford, Illinois, and that on December 29, 1973, Officer

Davis went into the building at 320-322 East State Street and "viewed films on the relocated machines. The films depicted explicit sexual acts such as oral intercourse." From testimony at trial it appears that Officer Davis visited the relocated adult book store at approximately 9:55 a.m. on December 29, 1973.

Based upon the complaint and affidavit, a search warrant was issued at 10:35 a.m. on December 29, 1973, by Judge Morrison, an associate judge of the circuit court of Winnebago County. This search warrant called for the search of a building located at 320-322 East State Street, Rockford, Illinois, for certain moving films as described in the complaint. Judge Morrison crossed out the word "seizing" on the search warrant form and wrote in the word "searching," and also crossed out the words "and to make your return of all instruments, articles or things seized without unnecessary delay."

Thereafter Judge Morrison went to the adult book store at 320-322 East State Street, Rockford, Illinois, and viewed the films in the projectors mounted on the wooden stands. After this viewing, he entered a written "Order of Seizure" calling for the seizure of "Certain moving films, approximately 72 in number, each being contained in a separate machine which is mounted upon a wooden stand." This order recited that it had issued at 1:40 p.m. on December 29, 1973. Attached to the order was the following description of the films to be seized:

"1. Films contained in 23 projectors to include People's Exhibits marked 1 through 23.

2. Films contained in packages, 19 in total.

3. Films located along East wall in bookcase in building, packaged, totalling 30 in number."

A search warrant return was made out by Officer Davis. The return stated that at 11 a.m. on December 29, 1973, Officer Davis had seized and taken possession of:

"Twenty-three (23) Vivitar model 733A moving film projectors with Twenty-three (23) sex films threaded into the projectors.

Thirty (30) 8 MM sex films from display case on East wall.

Seven (7) 8 MM sex films in a 'Bailey's' paper bag seized from under the cash register counter at the front of the store.

Twelve (12) 8 MM sex films in a 'Roaman's' white plastic bag seized from under the cash register counter at front of the store.* * *"

A 14-count criminal complaint was then filed against the defendant, charging him with the offense of obscenity. Defendant filed a motion to dismiss the complaint and a motion to suppress evidence, both of which were denied. Prior to trial defendant and the State entered into a written stipulation providing that neither party would object to the admission into

evidence at defendant's trial of People's Exhibits numbered 1 through 6 because of the chain of evidence or condition of the films. The stipulation also recited that these six films were seized by Officer Davis while executing a search warrant at 11 a.m. on December 29, 1973. The 14-count criminal complaint was dismissed prior to trial, and a 6-count information was filed. Following a jury trial, defendant was convicted and sentenced as indicated above.

The defendant contends that the search warrant procedure followed in the instant case was constitutionally defective for several reasons. Principally, defendant argues that the initial search warrant should never have issued because the complaint and affidavit in support thereof were insufficient to establish probable cause, and that the issuance of the "Order of Seizure" was an *ex post facto* attempt to justify the prior invalid search and seizure of 72 films.

The State argues that the search in this case may be sustained under the authority of *Heller v. New York* (1973), 413 U.S. 483, 37 L. Ed. 2d 745, 93 S. Ct. 2789. In *Heller*, three police officers viewed part of a film entitled "Blue Movie." Thereafter, an assistant District Attorney requested a judge of the New York Criminal Court to see a performance. The judge, accompanied by a police inspector, purchased a ticket and viewed the entire film. At its conclusion the judge signed a search warrant for the seizure of the film and three reels composing a single copy of the film were immediately seized. The United State's Supreme Court phrased the issue on appeal as

> "* * * whether a judicial officer authorized to issue warrants, who has viewed a film and finds it to be obscene, can issue a constitutionally valid warrant for the film's seizure as evidence in a prosecution against the exhibitor, without first conducting an adversary hearing on the issue of probable obscenity." (413 U.S. 483, 484, 37 L. Ed. 2d 745, 749-50, 93 S. Ct. 2789.)

The court upheld the search and seizure procedure holding, *inter alia*, that there is no absolute right to a prior adversary hearing to determine the issue of probable obscenity applicable to all cases in which allegedly obscene material is seized, particularly when the material is seized pursuant to a warrant to preserve the material as evidence in a criminal prosecution.

The State contends that the search and seizure procedure followed in this case is similar to that upheld in *Heller*. In making this argument, the State alleges that "it is apparent from the record as a whole" that no films were seized during the visit to the bookstore which Judge Morrison attended at about 11 a.m.; that the search warrant which issued at 10:35 a.m. is therefore immaterial in this case; and that the seizure of 72 films occurred later in the day, pursuant to the "Order of Seizure" which issued

at 1:40 p.m. Following this analysis of the instant record, the State contends that the seizure of 72 films was proper because probable cause for the issuance of the "Order of Seizure" was established by Judge Morrison's prior personal viewing of the films; a prior adversary hearing on the issue of probable obscenity was not necessary because the films were seized for evidentiary purposes and defendant did not request a prior adversary hearing to determine the issue of obscenity; and the seizure of 72 films was within the boundaries of the "Order of Seizure."

A careful review of the record belies the State's analysis. The foundation of the State's position is that no films were seized during the visit to the book store which Judge Morrison attended at about 11 a.m. This assertion, however, is contradicted by the search warrant return which states that 72 films were seized at 11 a.m.; by the written stipulation which states that the six films which formed the basis of the instant proceedings were seized in the course of executing a search warrant at 11 a.m.; and by the testimony of Officer Watson of the Rockford Police Department who stated that at about 11 a.m. "several" films were seized from behind or in front of each booth in a "projection room" in the book store. Thus, since the films upon which the proceedings against the defendant were based appear to have been seized at about 11 a.m., prior to the issuance of the "Order of Seizure," we find the case of *Heller v. New York* inapposite in the present case. It also follows that the viewing of the films by Judge Morrison and the "Order of Seizure" which issued at 1:40 p.m. can have no bearing upon the validity of the instant search and seizure.

Since the seizure of People Exhibits numbered 1 through 6 appears to have occurred pursuant to the authority of the search warrant which was issued at 10:35 a.m., the validity of the seizure must turn upon whether the complaint and affidavit in support thereof were sufficient to justify issuance of the warrant and whether the warrant itself was sufficient to justify the subsequent search and seizure.

■■■ In *People v. Brown* (1975), 27 Ill. App. 3d 891, 895, 326 N.E.2d 568, 571, this court stated:

"A distinction exists, on the one hand, between guns, contraband, or stolen goods and, on the other hand, quantities of books, movies and items arguably falling within first amendment protection. Absent exigent circumstances, a seizure of the latter requires a search warrant meeting a high standard of probable cause or an adversary hearing prior to seizure in order to determine probable cause. Without these safeguards, a seizure can be unreasonable as a form of prior restraint on the right of expression."

In examining the affidavit in support of the complaint for search warrant, we find that the description of the events which Officer Davis observed on

November 19, 1973, at the book store at 320-322 East State Street is of no consequence in determining whether a search warrant should have issued with respect to the premises at 321 East State Street, since there was no allegation that the films viewed on December 29, 1973, were the same films as were viewed on November 19. With respect to the December 29 visit to the relocated book store, Officer Davis did not specify the number of films viewed; nor did he specifically describe the films. In *Lee Art Theatre v. Virginia* (1968), 392 U.S. 636, 20 L. Ed. 2d 1313, 88 S. Ct. 2103, certain films were seized pursuant to a warrant issued on the basis of an affidavit of a police officer which stated only the titles of the films and that the officer had determined that the films were obscene based upon his personal observation of the films and the billboard in front of the theater. In holding the search invalid, the United States Supreme Court stated:

> "The admission of the films in evidence requires reversal of petitioner's conviction. A seizure of allegedly obscene books on the authority of a warrant 'issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered * * * obscene,' was held to be an unconstitutional seizure in Marcus v. Search Warrant, 367 U.S. 717, 731-732, 6 L. Ed. 2d 1127, 1135, 1136, 81 S. Ct. 1708. * * * The procedure under which the warrant issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer's conclusions was not a procedure 'designed to focus searchingly on the question of obscenity,' id., at 732, 6 L. Ed. 2d at 1136, and therefore fell short of constitutional requirements demanding necessary sensitivity to freedom of expression. See Freedman v. Maryland, 380 U.S. 51, 58-59, 13 L. Ed. 2d 649, 654, 655, 85 S. Ct. 734." (392 U.S. 636, 637, 20 L. Ed. 2d 1313, 1315, 88 S. Ct. 2103.)

In the instant case we likewise find that the issuance of the warrant based upon the mere conclusory allegations of Officer Davis failed to focus searchingly upon the issue of obscenity and was therefore invalid. The complaint for warrant and the affidavit in support thereof were insufficient to support issuance of the warrant.

■■ Furthermore, we find the search warrant itself to be defective and insufficient to justify the instant seizure. First, the warrant failed to describe the items to be seized with sufficient specificity. In *People v. Prall* (1924), 314 Ill. 518, 523, 145 N.E. 610, 612, our Supreme Court stated:

> "A minute and detailed description of the property to be seized is not required, but the property must be so definitely described that the officer making the search will not seize the wrong property. * * * [The warrant must give the officer] information by which he could select certain property within the description in the warrant

and refuse to take other property equally well described in the warrant."

In *People v. Kimmel* (1966), 34 Ill. 2d 578, 582, 217 N.E.2d 785, 787, our Supreme Court reviewed the history of "general warrants" and concluded as follows:

"The principle derived from this history is that 'the constitutional requirement that warrants must particularly describe the "things to be seized" is to be accorded the most scrupulous exactitude when the "things" are books * * *.' (379 U.S. at 485.)"

The court then stated:

"In the case before us the officers who searched the defendant's store did not have a general warrant, but they treated the warrant that they had as a license for a general search, and they took advantage of their presence in the bookstore to ferret out and seize whatever they considered to be contraband. An officer need not ignore plain contraband uncovered in a lawful search, (*cf. People v. Van Scoyk*, 20 Ill. 2d 232,) but it does not follow that the procedure employed in this case can be sustained." (34 Ill. 2d 578, 582, 217 N.E.2d 785, 787.)

In our view, the requirement that a warrant describe the thing to be seized with particularity is as applicable to films as it is to books. In his testimony Officer Davis stated that at the entry to the booth area in the book store there was a bulletin board showing a number and the contents of the films. Notwithstanding this, the warrant directed those executing it to search only for "[c]ertain moving films, approximately fourteen (14) in number, each being contained in a separate machine which is mounted upon a wooden stand." This is an inadequate description of the things to be seized. Second, the search warrant directed only that a search be made for 14 films, yet it is clear that at least 6, and perhaps as many as 72 films were not only searched for but were seized under its apparent authority. The seizure, then, of any and all films pursuant to the warrant issued at 10:35 a.m. on December 29 exceeded the authority of the warrant was therefore invalid.

We therefore find that the search and seizure of the films which were the basis of the six-count information below was invalid. Since this holding requires reversal we need not pass upon the other issues raised by defendant.

For the foregoing reasons the judgments are hereby reversed.

Reversed.

SEIDENFELD and HALLETT, JJ., concur.