THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FRANK PATROFF, Defendant-Appellant.

Second District   No. 85—0236

Opinion filed February 27, 1986.

J. Steven Beckett and Glenn A. Stanko, both of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (William L. Browers and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STROUSE delivered the opinion of the court:

Defendant, Frank Patroff, was charged in a four-count complaint with the offense of obscenity (Ill. Rev. Stat. 1983, ch. 38, par. 11—20(a)(1)) for the sale of four allegedly obscene magazines. Following a jury trial, defendant was found guilty and ordered to pay a fine of $910, plus costs. Defendant appeals.

On June 27, 1983, at approximately 10:30 a.m. Tim McCann, a deputy sheriff for the Kendall County sheriff and an investigator for the Kendall County State's Attorney's office, went to the Denmark Bookstore located at 1300 Business Route 30 in Aurora. The Denmark Bookstore was located in a two-story building, with the commercial premises on the first floor, and an apartment on the second. On the outside of the store were signs which indicated that a 50-cent browsing fee was required, and that a person must be 18 years of age to enter the store. Inside the store was a counter with a cash register and merchandise for sale. Around the walls of a large room there were racks with a large number of magazines, and in the center of the room there were also racks and tables containing magazines and paperback books. There were perhaps 1,000 magazines and at least 100 paperback books located within this room, as well as motion picture films and video tapes.

McCann, who was accompanied by three other individuals, approached the counter, saw the defendant, and paid him $2 for browsing fees. The defendant gave him receipts for the browsing fees. McCann and the other individuals then walked around the store looking at magazines. On the right-hand wall McCann focused upon four magazines in the middle of the wall, picked them up one at a time, and dictated a description of an excerpt from each of the magazines into a hand-held tape recorder. The defendant then approached McCann and asked him to leave and offered to refund the browsing fees.

McCann thereafter returned to the Kendall County courthouse, where a complaint for search warrant and supporting affidavit were prepared. The affidavit described McCann's law enforcement authority as well as the location of Denmark Bookstore, and indicated that on June 27 he had entered the bookstore and inspected magazines that were on display, including magazines identified by content on an attached exhibit B, which recited:

"Magazine entitled Wild Trio, number 307. Cover of said magazine depicting one male without pants lying supine with his penis inserted into a female subject vagina, while a second female licks the vaginal area of the first female.

On page 8 of said magazine, one male subject lying supine

with his penis inserted into the vagina of the first female with the second female was [sic] licking the vaginal area of the first female. On the following pages, the photographs of a female subject lying on a couch while a male subject inserts his penis into the first female vagina, while a second female subject licks the testicles of the male.

Magazine entitled Fuck Highway, number 1. Cover of said magazine depicting the penis of a male subject being inserted into the anus of a female while said female holds her fingers in her vaginal area. On the third page of said magazine, photograph of a male subject in the front seat of a car who is kissing a female subject while a second female subject inserts the penis of the male subject into her mouth with the first female subject having her breast and her panties exposed.

Magazine entitled Funky Girls, number 1, 'MGN.' Cover of said magazine depicting the insertion of a tan prostheltic [sic] device into the vaginal area of a female. Sixth page of said magazine depicting one female subject lying on a blanket, while a second female subject inserts her tongue into the vagina of the first female, one female having her nude breast exposed. Eighteenth page of said magazine showing the female licking the anus of a second female while the first female holds the lips of the first females [sic] vagina open.

Magazine entitled Titans, 'Bullet Productions.' Cover of said magazine depicting one male subject lying supine while a second naked male subject has inserted the penis of the first male subject into his mouth while a third male subject inserts his penis anally into the second male subject."

The complaint for search warrant sought authority to seize the magazines described in exhibit B.

Deputy McCann took the search warrant documents to Judge James Wilson in Aurora, who reviewed the documents and issued a search warrant calling for the seizure of the four magazines. Later that same day, McCann returned to the Denmark Bookstore and executed the search warrant, taking into his possession four magazines entitled "Wild Trio," "Fuck Highway," "Funky Girls," and "Titans." On June 28, 1983, a criminal complaint charging defendant with obscenity was filed, and defendant was arrested and released on bond. An amended complaint was subsequently filed charging one count of obscenity for each of the four magazines.

Following a jury trial in which Deputy McCann was the sole witness, defendant was found guilty of all four counts. His post-trial mo-

tion was denied, and he was ordered to pay a fine of $910, plus costs.

Defendant first contends that the affidavit for the search warrant was insufficient to provide probable cause for a finding that the magazines were obscene. Essentially, defendant argues that the judge could not possibly make a determination of probable cause because the affidavit provided him with only a "brief and excerpted description of sex acts" and he had no way of knowing how the described sex acts relate to the magazine as a whole.

The issuing judge did not view the magazines and the sole basis for the issuance of the search warrant was the description of the magazines contained in exhibit B which was appended to the affidavit. The question is whether the search warrant affidavit provides sufficient information to support a finding of probable cause as to the obscenity of the material.

In acting upon a complaint for a search warrant calling for the seizure of allegedly obscene materials, the issuing judge is guided by a standard of probable cause. The test for probable cause is governed only by common sense and the practical considerations of everyday life. (*People v. Hobbs* (1978), 59 Ill. App. 3d 793, 799.) The issuing judge must weigh the totality of all the facts before him in determining whether there is sufficient evidence to justify probable cause that an item is obscene. (See *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 799; see also *People v. Foote* (1982), 104 Ill. App. 3d 581, 583-84.) However, the judicial officer issuing the search warrant is not required to view the material to be seized in order to establish probable cause, as long as the supporting affidavit is specific and explicit and not merely conclusional. See *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 799.

In *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 799, relied upon by both parties, certain films were seized pursuant to a search warrant. The supporting affidavits described various scenes from the films which the police officer had viewed by way of coin-operated movie projectors in booths. The descriptions contained in the affidavits each consisted of several sentences setting forth the participants in the film and their activities in several scenes. 59 Ill. App. 3d 793, 795-97.

In appealing their convictions, defendants argued, *inter alia*, that the search warrant affidavits were insufficient to give the issuing judge probable cause to believe that the films were obscene, because the affidavits did not specify the length of the films. The court rejected this argument, holding that the length of the film was not an essential element of the affidavit and that the description of the scenes of the films provided a factually sufficient basis for the judge

to make his own determination on the question of obscenity prior to issuing the search warrants. *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 799; accord, *People v. Foote* (1982), 104 Ill. App. 3d 581, 583-84.

■ Defendant in the present case makes the same argument, maintaining that exhibit B "provides no information regarding the length of the magazines, the continuity of the described sex acts throughout the magazine, the context of the sex acts, including accompanying text if any, the theme or plot of the magazine or lack thereof, and the description of articles or stories unrelated to the photographs if, indeed, any were present." He claims these cursory descriptions indicate only the *possible* obscenity of the magazines and they provide no information to assist in determining whether or not the magazines are obscene.

In deciding whether a search warrant should be issued, the issuing judge need not determine whether the materials in question are, in fact, obscene beyond a reasonable doubt; rather, the question is whether there existed probable cause to believe they are obscene. See *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 799.

The affidavit for the search warrant in the present case contained sufficient information from which the trial judge could find probable cause to believe these magazines were obscene. The elements which defendant claims were lacking (the length of the magazines, the context and continuity of the sex acts, and the accompanying text) are not essential to the probable cause determination in this case.

■ Defendant further argues that there is insufficient evidence to show that he offered these magazines for sale. We find this argument ill-founded, in light of the following relevant facts: the store had a sign advertising it as the Denmark Bookstore and other signs about contents; the defendant was the only person in the store except for customers; books, magazines and films were arranged for sale and were high-priced; defendant was the only person at the cash register; defendant accepted the browsing fee, which would be credited to purchases; and defendant was in a position to offer a refund.

■ Defendant next argues that the State failed to prove that he had the requisite *scienter* for a charge of obscenity. He maintains he was merely an employee of the bookstore, as opposed to an owner or operator, and therefore he must be found to have more direct involvement with the operation of the store than mere presence. Otherwise, he argues, bookstore employees such as himself would be subject to absolute criminal liability.

The State responds that it provided adequate proof that defendant knowingly offered obscene magazines for sale by demonstrating

that the store stocks only adult materials, that it charges a browsing fee, that it restricts admission to adults, that the magazines are high-priced, and that defendant asked Deputy McCann to leave the store and offered to return the browsing fee after he saw McCann dictating descriptions of the contents of the magazines into a hand-held tape recorder.

The obscenity statute provides that a person commits obscenity when "with knowledge of the nature or content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed the nature or content thereof, he *** offers or agrees to sell, deliver or provide any obscene writing [or] picture ***." (Ill. Rev. Stat. 1983, ch. 38, par. 11—20(a)(1).) This element of *scienter* must be proved by the State. *People v. Anderson* (1985), 130 Ill. App. 3d 318, 327; see *Smith v. California* (1959), 361 U.S. 147, 153, 4 L. Ed. 2d 205, 211, 80 S. Ct. 215, 218.

■ Defendant was charged with offering the four obscene magazines for sale "with knowledge of the content thereof or recklessly having failed to exercise reasonable inspection which would have disclosed the nature or content of [each] obscene magazine." He maintains his conviction should be reversed because he was not shown to have the requisite *scienter* regarding the sale of obscene materials as mandated by the statute. Defendant relies solely on *People v. Hart* (1981), 101 Ill. App. 3d 343, in support of this position.

In *Hart*, the defendant was a clerk in an adult bookstore in Rockford. A police officer entered the bookstore and asked defendant for $5 worth of quarters. He then asked her if the movies in a back room were any good, to which she responded she did not know. He watched three movies in an arcade (a separate room located 30 feet from the defendant), then browsed through the store. The store, which restricted admittance to adults, was filled with racks holding hundreds of magazines and paperback books, as well as miscellaneous sexual novelties. As the police officer was leaving the store, he again engaged the clerk in conversation, in which she advised him that some of the films available for sale at the counter might be the same as some of the films in the arcade. The films the officer viewed were ultimately seized by warrant, and the defendant clerk was arrested and charged with obscenity.

On appeal, Hart claimed that she had neither "made available for public viewing" the films in question, nor possessed the requisite *scienter*, that is, that she "knew the nature or content or recklessly refused to exercise reasonable inspection of the nature or content" of the charged film. In response, the State argued that the circum-

stances describing the environment of the bookstore and the reported conversations of the defendant suggested an inference that she had the requisite *scienter* and was responsible for the dissemination of the films.

This court specifically rejected the State's contentions and reversed defendant's conviction, concluding that the State failed to prove the element of *scienter* without which absolute criminal liability for obscenity would be imposed. The court held that the evidence did not establish that defendant knew which movies the officer was going to choose out of 36 possible choices, nor that the other 33 movies were obscene. *People v. Hart* (1981), 101 Ill. App. 3d 343, 351.

The evidence in the case at bar establishes that when Deputy McCann went to the Denmark Bookstore on June 27, 1983, there were signs mounted on the front door of the store stating that there is a browsing fee of 50 cents and that one must be at least 18 years old to enter the store. When McCann entered the store, defendant was at the cash register. McCann identified certain photographs depicting the interior of the store. The photos reveal that the stock of the store is exclusively related to sexually oriented materials, and the details of such sexual conduct can be clearly seen on the covers of most of the magazines in the photos.

When asked if he knew defendant's status with regard to the management of the store, McCann stated that he knew approximately eight months later, on February 8, 1984, that the defendant was the manager of the store. On several occasions prior to June 27, 1983, McCann had seen the defendant in various parts of the store including the service counter and the general sales area of the store.

We find *Hart* to be factually distinguishable from the present case. In *Hart*, no evidence was presented that the defendant had knowledge of the contents of any of the films or that she had ever been in the arcade where the films were shown. To the contrary, defendant in the present case had been seen in various parts of the bookstore by Deputy McCann on several occasions. Moreover, the evidence clearly demonstrates that the bookstore contained, *inter alia*, hundreds of magazines with explicit photographs on the covers. Additionally, the magazines were very high-priced and the store restricted admittance to individuals 18 years of age or older and charged a 50-cent browsing fee, as indicated by a sign on the outer door.

This evidence was sufficient, if believed by the jury, to find that defendant knowingly offered obscene magazines for sale. These factors are indicative of the requisite *scienter*. (See *People v. Pope* (1985), 138 Ill. App. 3d 726, 742.) It is beyond reason that defendant

did not know or have reason to know the nature or content of the magazines in question. Since even casual examination of an obscene magazine cover is sufficient to establish a violation of the obscenity statute (138 Ill. App. 3d 726, 742), we conclude the State provided adequate proof that defendant knowingly offered obscene magazines for sale.

■ Defendant's final contention is that the Illinois obscenity statute (Ill. Rev. Stat. 1983, ch. 38, par. 11—20) is unconstitutional because it is vague and overbroad and includes material that would appeal to lust alone which would appeal to the normal curiosity of an adult about sexual matters. Defendant primarily bases his contention on the recent case of *Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 86 L. Ed. 2d 394, 105 S. Ct. 2794.

The State's position is that *Brockett* has no constitutional implication for the Illinois obscenity statute (Ill. Rev. Stat. 1983, ch. 38, par. 11—20) and that the statute is not unconstitutional for using an incorrect definition of prurient interest.

The Illinois Supreme Court has consistently upheld the constitutionality of the Illinois obscenity statute. (See, *e.g., People v. Ward* (1976), 63 Ill. 2d 437, 440-41; *People v. Pope* (1985), 138 Ill. App. 3d 726, 734.) In particular, the court has rejected the arguments that the statute is unconstitutionally vague or overbroad (*People v. Ridens* (1974), 59 Ill. 2d 362, 372), as defendant here argues. Thus, the remaining question for this court is whether the Illinois obscenity statute is unconstitutional because it prohibits material that would appeal solely to lust which is a normal curiosity about sexual matters.

In *Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 86 L. Ed. 2d 394, 105 S. Ct. 2794, the Supreme Court reviewed a Washington obscenity statute which has been held unconstitutional by the Court of Appeals for the Ninth Circuit. Within the statutory definition of obscenity, "prurient" was defined as "that which incites lasciviousness or lust." (Wash. Rev. Code sec. 7.48A.010.(8) (1983).) The court of appeals held that by including "lust" in the definition of "prurient," the statute's reach extended to constitutionally protected material that merely stimulated normal sexual responses. Accordingly, the court held the entire statute to be unconstitutionally overbroad. *Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 494-95, 86 L. Ed. 2d 394, 400, 105 S. Ct. 2794, 2797.

The supreme court reversed on the basis that the court of appeals erred in striking down the statute in its entirety rather than in part, and that it should have found only the definitional section of the statute unconstitutional. The court did, however, agree with the court of

appeals that the term "lust" could refer to a normal sexual curiosity and, therefore, could not be a definition of prurient interest. *Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 504-05, 86 L. Ed. 2d 394, 406-07, 105 S. Ct. 2794, 2802.

We conclude *Brockett* has no constitutional implications for the Illinois obscenity statute which defines prurient interest as "a shameful or morbid interest in nudity, sex or excretion" (Ill. Rev. Stat. 1983, ch. 38, par. 11—20(b)). In fact, the *Brockett* court defined prurience for the purposes of identifying obscenity as "that which appeals to a shameful or morbid interest in sex." (*Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 504, 86 L. Ed. 2d 394, 406, 105 S. Ct. 2794, 2802.) Accordingly, defendant's reliance on *Brockett* is misplaced, and his argument that the Illinois obscenity statute is unconstitutional under the guise of *Brockett* is meritless.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

NASH, P.J., and REINHARD, J., concur.