THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SEQUOIA BOOKS, INC., Defendant-Appellant.

Second District No. 85—0504

Opinion filed July 9, 1986.—Rehearing denied August 19, 1986.

J. Steven Beckett, of Reno, O'Byrne & Kepley, of Champaign, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (William L. Browers and Marshall Stevens, both of State's Attorneys Appellate Prosecutor, of Elgin, and Kenneth R. Boyle, of State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Sequoia Books, Inc., was charged in an amended information with 10 counts of obscenity (Ill. Rev. Stat. 1983, ch. 38, par. 11—20(a)(1)) involving the sale of certain magazines seized during a search pursuant to a warrant. Following a mistrial after the jury was unable to reach a verdict, defendant was then tried in a jury trial on only three counts and was found guilty of all three counts of obscenity. Defendant was fined $910.

Defendant raises the following issues on appeal: (1) whether the procedures utilized in obtaining and executing the search warrant were constitutionally sufficient where a large scale seizure was conducted; (2) whether the trial court's non-Illinois Pattern Jury Instruction improperly instructed the jury to determine the community standard on the basis of their own observations in life in Illinois; and (3) whether the Illinois obscenity statute is unconstitutional because it is vague and

overbroad and includes material that would appeal to lust alone which would appeal to the normal curiosity of an adult about sexual matters.

On January 23, 1984, Judge Rex Meilinger issued a search warrant for the Denmark Bookstore in Aurora, owned and operated by defendant, to search for evidence of the offense of obscenity in violation of section 11—20 of the Criminal Code of 1961 (Ill. Rev. Stat.1983, ch. 38, par. 11—20) and seize any "[m]agazines containing depictions or portion thereof of the following: Cunnilingus, fellatio, anal intercourse, excretion of semen from penis onto other person, masturbation, vaginal or anal insertion of prosthetic devices, insertion of tongue into anus." (Reprinted in Appendix A.) Attached to the complaint for warrant were two affidavits. Robert Wunsch stated in his affidavit (reprinted in Appendix B) that he had visited defendant's bookstore and purchased two magazines entitled Illegal Entry and Golden Girls, each of which depicted more than one of the sexual acts described in the warrant. He also stated that while at the bookstore, he examined three other magazines, Anal Love, Anal Climax, and Hot Black Boxes, all of which depicted one or more of the acts described in the warrant. Deputy Sheriff Timothy McCann stated in his affidavit that numerous criminal charges have been filed under the obscenity statute "against various persons resulting from the purchase of magazines" at defendant's bookstore. The issuing judge also received the two magazines purchased by Wunsch to examine prior to issuing the warrant.

Armed with the search warrant, Deputy McCann, along with Wunsch and three other officers, entered defendant's bookstore and seized over 375 magazines. Defendant, along with other codefendants who are not parties to this appeal or the trial below, was charged with obscenity for offering the magazines for sale. (Ill. Rev. Stat. 1983, ch. 38, par. 11—20(a)(1).) Defendant filed a motion to quash the search warrant and suppress the items seized, and to dismiss the complaint challenging the constitutionality of the obscenity statute.

On March 22, 1984, Judge Richard Larson entertained defendant's motions. In addition, the court heard similar motions to quash involving the same defendants and the execution of three different search warrants on three different occasions. Concerning the search of January 23, 1984, Robert Wunsch testified that he was the chief of police for the village of Oswego acting as a "special deputy" for Kendall County on January 23 when he entered the bookstore to purchase some magazines. He paid a 50-cent browsing charge to a man behind the cashier's counter, later identified as Mr. Patroff. (Originally a defendant in this matter, Patroff was eventually convicted for obscenity in relation to another search as reflected in *People v. Patroff* (1986), 141

Ill. App. 3d 483, 490 N.E.2d 148.) Wunsch leafed through a number of magazines and was in the store for approximately 15 to 20 minutes. He stated that he was specifically looking for magazines which contained obscenity, as he defined it: "contained anal intercourse, excretion of semen onto another person, masturbation, insertion of the tongue into the anus." Wunsch also participated in the January 23 search. He estimated that he reviewed 50 or 60 magazines. When asked what he was looking for in the magazines, he responded that he was looking for the specific sexual acts described in the warrant. Among the magazines he personally seized were two more copies of the magazines that he had previously purchased.

Deputy Sheriff McCann testified at the hearing that he participated in three searches of the bookstore pursuant to three warrants on three separate occasions. Specifically concerning the January 23 search, he stated that he gave Judge Meilinger the two magazines Wunsch had purchased at the bookstore. In describing the search procedure, McCann stated that the officers would browse through the magazines searching for depictions of the sex acts described in the warrant, if the cover photograph did not depict such acts, and then would give those containing the depictions to McCann, who marked the magazines and placed them in boxes. Only one copy of each magazine was seized. McCann also stated that there were occasions during the search that he disagreed with another officer's determination that a magazine contained a depiction of a certain act and refused to seize the magazine. A magazine was seized simply on the basis of whether it contained a depiction of a sex act as described in the warrant. Other members of the search team also testified as to the search procedure. After hearing arguments on both motions, the court denied both the motion to quash the search warrant and the motion to dismiss the complaint.

Defendant was originally charged with two counts of obscenity. Later, the charges were increased by an amended information to 48 counts of obscenity pertaining to 24 specifically listed magazines. The State eventually reduced the number of magazines involved as well as the number of counts charged to 10. Defendant proceeded to trial which resulted in a hung jury. Defendant was again tried before a jury. The State, however, chose to proceed on only three counts of the amended information while dismissing the remaining seven. Additionally, prior to proceeding in the second trial, the court accepted the stipulation that defendant owned and operated the bookstore, and on January 23, 1984, offered for sale three magazines, Jammed, Innocent Lesbians and Rough House, knowing the nature of the contents.

The testimony at trial is briefly summarized. Deputy McCann testi-

fied that he entered the bookstore on January 23, and identified photographs of the premises, including the sign on the front door which limited admittance to adults over 18 years old. He also identified the three magazines which were admitted into evidence and distributed to the jury for their examination. Michael Chiappetta, a licensed psychologist and social worker, testified on behalf of the State that the three magazines appeal to the prurient interests of the average adult and have no social redeeming value. Roderick Bell, a behavior and social scientist, testified on behalf of defendant that he conducted a public opinion poll concerning Illinois residents' view of sexually explicit magazines and submitted the result into evidence. Dr. Carl Hamann, a physician specializing in psychiatry, testified on behalf of defendant that the magazines would appeal to an average adult's natural curiosity concerning sex. John Breen, an investigator, testified on behalf of defendant that he purchased five magazines containing sexually explicit materials at various establishments around Illinois. The stores all had signs on the front doors limiting admittance to only adults 18 years of age or older.

At the instruction conference, the State tendered a modified version of Illinois Pattern Jury Instruction No. 9.57 (Illinois Pattern Jury Instruction, Criminal, No. 9.57 (2d ed. 1981) (hereinafter cited as IPI Criminal 2d)) while defendant tendered its own modified version of IPI Criminal 2d No. 9.57. Both instructions concerned the definition of obscenity. The trial court agreed with defendant's objection to the State's definitional instruction and accepted defendant's instruction. The court, however, modified defendant's instruction removing the following language:

> "In determining whether a magazine is obscene, you must not judge it by your own personal standards, even if you are personally offended by the material."

The court also chose to formulate its own instruction which was submitted to the jury over defendant's objection. The instruction stated:

> "In determining whether a magazine is obscene applying contemporary community standards you may consider the material in light of your collective observations in life in the State of Illinois, but you must not judge it by your own personal standards even if you are personally offended by the material."

The jury returned verdicts of guilty on all three counts of obscenity charged.

Defendant's initial contention is that the search and seizure procedure was not designed to focus searchingly on the issue of obscenity, but rather was designed as a prior restraint to seize the largest number of magazines possible that the officers believed to be obscene. In partic-

ular, it argues that the complaint for search warrant and the affidavits attached to it failed to provide sufficient information to support a finding of probable cause as to the obscenity of the material. Additionally, defendant asserts that the search warrant failed to specify the items to be seized making the warrant a general warrant and leaving the executing officers with the ultimate determination of what items would be seized.

██ Defendant first argues that the issuing judge had insufficient facts to establish probable cause. Defendant admits that our recent decision in *People v. Patroff* (1986), 141 Ill. App. 3d 483, 490 N.E.2d 148, is dispositive of this issue. Although the fundamental principles of the first and fourth amendments as applied to the States through the fourteenth amendment require a heightened scrutiny of search and seizure procedures involving allegedly obscene materials because it constitutes a form of prior restraint (see *Maryland v. Macon* (1985), 472 U.S. 463, 86 L. Ed. 2d 370, 105 S. Ct. 2778; *Lo-Ji Sales, Inc. v. New York* (1979), 442 U.S. 319, 60 L. Ed. 2d 920, 99 S. Ct. 2319, see also *Roaden v. Kentucky* (1973), 413 U.S. 496, 37 L. Ed. 2d 757, 93 S. Ct. 2796), an issuing judge acting upon a complaint for a search warrant authorizing the seizure of materials presumptively protected by the first amendment is still guided by the same standard of probable cause used to review warrants generally (*People v. Patroff* (1986), 141 Ill. App. 3d 483, 487, 490 N.E.2d 148). The test for probable cause is governed by common sense and the practical considerations of everyday life. (141 Ill. App. 3d 483, 487, 490 N.E.2d 148; *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 799, 375 N.E.2d 1367.) The issuing judge must weigh the totality of all the facts before him when determining whether there is sufficient evidence to justify probable cause that an item is obscene. (*People v. Patroff* (1986), 141 Ill. App. 3d 483, 487, 490 N.E.2d 148; *People v. Foote* (1982), 104 Ill. App. 3d 581, 583-84, 432 N.E.2d 1254; *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 799, 375 N.E.2d 1367.) The judicial officer issuing the search warrant is not required to view the material to be seized in order to establish probable cause, as long as the supporting affidavits are specific and explicit and are not merely conclusional. *People v. Patroff* (1986), 141 Ill. App. 3d 483, 487, 490 N.E.2d 148; *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 799, 375 N.E.2d 1367.

Defendant, relying on *Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 86 L. Ed. 2d 394, 105 S. Ct. 2794, argues that a probable-cause determination cannot be made without knowing about the whole of the material because all the elements of obscenity must be established on their own for material to be adjudged obscene. *Brockett,*

however, did not involve a probable-cause issue but simply examined the validity of a State's obscenity statute. (See 472 U.S. 491, 86 L. Ed. 2d 394, 105 S. Ct. 2794.) Defendant's reliance on *United States v. Tupler* (9th Cir. 1977), 564 F.2d 1294, is also misplaced. In *Tupler*, the Ninth Circuit Court of Appeals invalidated a search warrant stating that the issuing magistrate did not have an adequate factual basis to determine whether the seized items were obscene. (564 F.2d 1294, 1297-98.) *Tupler*, however, involved a search warrant to seize films. The court concluded that the affidavits were insufficient to establish probable cause because they were not based on the contents of the entire film but simply based upon the pictures on the boxes which contained the films. (564 F.2d 1294, 1296-97.) No one had viewed the films prior to the issuance of the search warrant and the seizure of the films. (564 F.2d 1294, 1296.) Defendant also cites other out-of-State cases which we find are factually inapposite.

█ In deciding whether a search warrant should be issued, the issuing judge need not determine whether the materials in question are, in fact, obscene beyond a reasonable doubt. (See *New York v. P. J. Video, Inc.* (1986), 475 U.S. ___, 89 L. Ed. 2d 871, 106 S. Ct. 1610.) Rather, the question is whether there exists probable cause to believe the materials are obscene. (*People v. Patroff* (1986), 141 Ill. App. 3d 483, 487, 490 N.E.2d 148; *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 799, 375 N.E.2d 1367.) In this case, the complaint for search warrant requested authority to search the bookstore for instruments, etc., used in the commission of obscenity specifying that these instruments were magazines which contained depictions of cunnilingus, fellatio, anal intercourse, excretion of semen from the penis onto other persons, masturbation, vaginal or anal insertion of prosthetic devices, and insertion of the tongue into anus. (Reprinted in Appendix C.) The affidavit of Robert Wunsch, attached to the complaint, stated that he was in the bookstore, purchased two magazines containing depictions of the explicit sexual acts listed in the complaint, and viewed three other magazines which also contained some of these depictions, and that these magazines were offered for sale to the public. The two magazines which he purchased were also turned over to the issuing judge for his examination. Deputy McCann's affidavit, also attached, stated that numerous criminal charges under the obscenity statute were pending against various persons as the result of the purchase of materials from the bookstore. Although defendant argues that the information presented to the judge was only sufficient to establish the second prong "patently offensive representations," of the three-prong obscenity test (for a specific description of the test, see *People v. Anderson* (1985),

130 Ill. App. 3d 318, 473 N.E.2d 1345, *aff'd* (1986), 112 Ill. 2d 39, 490 N.E.2d 1263), we conclude that the issuing judge had sufficient information to determine that materials depicting the acts listed in the search warrant and exhibited in the two magazines not only were patently offensive representations, but also would probably appeal, as a whole, to the prurient interests based on contemporary community standards and would probably be without redeeming social value. (See *New York v. P. J. Video, Inc.* (1986), 475 U.S. ___, 89 L. Ed. 2d 871, 106 S. Ct. 1610.) Based upon the totality of the circumstances, there is sufficient specific and explicit information presented to the issuing judge to justify the issuance of a warrant for the search of the bookstore for evidence of allegedly obscene magazines.

■ Defendant next argues that the search warrant did not sufficiently particularize the items to be seized and should have been quashed by the trial court as a general warrant. It argues that this search warrant allowed the executing officers to determine what magazines were obscene in direct violation of the fundamental principles set forth in *Marcus v. Search Warrants of Property* (1961), 367 U.S. 717, 6 L. Ed. 2d 1127, 81 S. Ct. 1708, and those decisions following it. (See *Maryland v. Macon* (1985), 472 U.S. 463, 86 L. Ed. 2d 370, 105 S. Ct. 2778; *Lo-Ji Sales, Inc. v. New York* (1979), 442 U.S. 319, 60 L. Ed. 2d 920, 99 S. Ct. 2319; *A Quantity of Copies of Books v. Kansas* (1964), 378 U.S. 205, 12 L. Ed. 2d 809, 84 S. Ct. 1723.) It also points out that Illinois recognizes the impropriety of general warrants. (See *People v. Kimmel* (1966), 34 Ill. 2d 578, 217 N.E.2d 785; *People v. Bates* (1976), 39 Ill. App. 3d 259, 350 N.E.2d 44; *People v. Gifford* (1975), 26 Ill. App. 3d 272, 325 N.E.2d 81.) The State responds, relying on *Sequoia Books, Inc. v. McDonald* (7th Cir. 1984), 725 F.2d 1091, that the search warrant was constitutionally sound because the items to be seized were particularly described in the most feasible way possible. Defendant replies, however, that *Sequoia Books* is not controlling authority and should be given the same weight as *United States v. Guarino* (1st Cir. 1984), 729 F.2d 864, which defendant argues is expressly contrary to the decision in *Sequoia Books*.

The cases relied upon by defendant, however, are factually distinguishable from the facts in this case. The search warrants described in the decisions relied on by defendant generally involve the authorization for the seizure of "obscene materials." (See *Lo-Ji Sales, Inc. v. New York* (1979), 442 U.S. 319, 60 L. Ed. 2d 920, 99 S. Ct. 2319; *Marcus v. Search Warrants of Property* (1961), 367 U.S. 717, 6 L. Ed. 2d 1127, 81 S. Ct. 1708.) For example, *Guarino* involved a search warrant authorizing the seizure of "a quantity of obscene materials." (*United*

*States v. Guarino* (1st Cir. 1984), 729 F.2d 864, 865.) Nothing in the search warrant defined "obscene materials" allowing the executing officers to seize any items which in their opinion were obscene. 729 F.2d 864, 865-69.

On the other hand, *Sequoia Books* presents strikingly similar facts to this case. Not only did the case involve the same bookstore, the warrant there authorized the seizure of nine specific magazines and also magazines depicting: "[c]unnilingus, fellatio, anal intercourse, vaginal intercourse, excretion of semen from penis onto other person, masturbation, vaginal or anal insertion of prosthetic [*sic*] devices, insertion of tongue into anus." (*Sequoia Books, Inc. v. McDonald* (7th Cir. 1984), 725 F.2d 1091, 1093.) The court found that confining the officers to seizing materials containing these graphic depictions of sexual conduct satisfied the requirements of particular description. (725 F.2d 1091, 1093.) It reasoned that the seizure was temporary for evidentiary purposes and not permanent for destruction purposes. The determination of obscenity was not left to the executing officers because the officers were looking for specific depictions in the materials and not for items generally described as "obscene" materials. (725 F.2d 1091, 1093-94.) The purpose was simply to obtain evidence. 725 F.2d 1091, 1094.

A review of the warrant in this case indicates that it is factually analogous to the warrant in *Sequoia Books*. The warrant here authorized the officers to seize only magazines which contained one or more of the explicit sexual acts described in the warrant, and, in fact, the officers only seized a copy of each magazine. The purpose of the search in this case was not to suppress materials, but was to obtain evidence of an alleged criminal offense.

Although *Sequoia Books* is a decision not binding upon this court (*City of Chicago v. Groffman* (1977), 68 Ill. 2d 112, 118, 368 N.E.2d 891), we find that the reasoning of the Seventh Circuit is sound and persuasive. Underlying the reasoning of the decisions involving the requirement that the items to be seized must be particularly described is the prevention of general, exploratory searches by executing officials with unfettered discretion. (See *Lo-Ji Sales, Inc. v. New York* (1979), 442 U.S. 319, 325, 60 L. Ed. 2d 920, 927-28, 99 S. Ct. 2319, 2324; *Standford v. Texas* (1965), 379 U.S. 476, 485-86, 13 L. Ed. 2d 431, 437, 85 S. Ct. 506, 512; *United States v. Guarino* (1st Cir. 1984), 729 F.2d 864, 867; *Sovereign News Co. v. United States* (6th Cir. 1982), 690 F.2d 569, 576; *United States v. Espinoza* (4th Cir. 1981), 641 F.2d 153, 165; *In re Matter of Seizure Property Belonging to Talk of the Town Bookstore, Inc.* (9th Cir. 1981), 644 F.2d 1317, 1318; *Randall Book Corp. v. Maryland* (1985), 64 Md. App. 589, 497 A.2d 1174, 1180.) The lan-

guage of the search warrant here may initially appear to be general; however, when compared to the "general" warrants of the past, we conclude that the conduct intended to be prevented, that is the *ad hoc* determinations of obscenity by law-enforcement personnel suppressing first amendment rights, is accomplished by this search warrant because it is a search for evidence and a seizure of items depicting certain explicit sexual conduct which, by prior judicial determination, indicates a fair probability that they meet the three-prong obscenity test. Under the facts presented in this case, we find the search warrant constitutionally sufficient.

■■ Defendant's next contention is that the submission of Court's Instruction No. 1, a non-IPI instruction, constituted reversible error because it improperly permitted the jury to apply their own sense of "community standards," not based on the evidence in the case, in deciding the issue of obscenity. It apparently argues that the instruction allowed the jury to determine whether the magazines at issue were obscene based upon the personal standards of others in direct contradiction of this court's rulings in *People v. Hart* (1981), 101 Ill. App. 3d 343, 427 N.E.2d 1352, and *People v. Nelson* (1980), 88 Ill. App. 3d 196, 410 N.E.2d 476.

The instruction issued by the court stated:

> "In determining whether a magazine is obscene applying contemporary community standards you may consider the material in light of your collective observations in life in the State of Illinois, but you must not judge it by your own personal standards even if you are personally offended by the material."

Defendant correctly points out that an obscenity determination must be accomplished through the application of a contemporary statewide community standard while avoiding the utilization of any personal standards. (See *People v. Ridens* (1974), 59 Ill. 2d 362, 371, 321 N.E.2d 264; *People v. Morrison* (1985), 138 Ill. App. 3d 595, 601, 486 N.E.2d 345.) Defendant's interpretation that the instruction improperly allowed the jury to determine whether the magazines were obscene based upon the personal standards of their friends, relatives, or acquaintances, or upon something they had read or seen, however, is inaccurate. It would appear that defendant is arguing that a jury must depend solely upon the evidence submitted to it when determining the "statewide community standard" they will follow and may not rely on common sense or experiences in life in arriving at the applicable community standard in the State. In essence, defendant would require the jury to accept its surveys and experts' opinions as establishing the statewide community standard. This proposition is unsupported. The

determination of what the statewide community standard is not a question of law for a court to set, but a question of fact for a jury to decide (*cf. People v. Pope* (1985), 138 Ill. App. 3d 726, 741-42, 486 N.E.2d 350); and the members of a jury are generally instructed to examine the evidence in "light of your own observations and experience in life" (IPI Criminal 2d No. 1.01 [10].) Defendant's attempts to support its interpretation with authority is unsuccessful. In *People v. Nelson* (1980), 88 Ill. App. 3d 196, 410 N.E.2d 476, this court determined that it was error to refuse survey evidence of Illinois residents' views of sexually explicit materials to assist the jury in determining the community standard. (88 Ill. App. 3d 196, 198-200, 410 N.E.2d 476.) In *People v. Hart* (1981), 101 Ill. App. 3d 343, 427 N.E.2d 1352, the court ruled on the propriety of an instruction informing the jury of the State's nonduty to establish the community standard. (101 Ill. App. 3d 343, 350-51, 427 N.E.2d 1352.) Although it noted that jurors reliance on their "*own* observations and *own* experiences in life" because of the lack of evidence establishing the community standard is not the statewide standard to be applied (emphasis in original) (101 Ill. App. 3d 343, 350, 427 N.E.2d 1352), the court, as in *Nelson* did not prohibit a jury from relying on its own collective experiences in applying the statewide standard to the materials.

■ A non-IPI instruction should be used only if a pattern instruction does not contain an accurate instruction on the subject that the jury should be instructed upon and if the tendered non-IPI instruction is simple, brief, impartial and free from argument. (87 Ill. 2d R. 451(a); *People v. Haywood* (1980), 82 Ill. 2d 540, 545, 413 N.E.2d 410.) Jury instructions, however, should not be misleading or confusing (*People v. Pope* (1985), 138 Ill. App. 3d 726, 740, 486 N.E.2d 350); and jurors are considered properly instructed if all the instructions construed together informed them of the applicable law (*People v. Morrison* (1985), 138 Ill. App. 3d 595, 599, 486 N.E.2d 345). The decision whether to give a non-IPI instruction is within the discretion of the trial court. *People v. Pope* (1985), 138 Ill. App. 3d 726, 740, 486 N.E.2d 350.

Although the phrase "you may consider the material in light of your collective observations in life" is repetitive of IPI Criminal 2d No. 1.01 [10] and unnecessary, it is not misleading so as to cause harm. We note that the jury was also instructed with a non-IPI instruction on the definition of obscenity formulated by defendant:

"A magazine is obscene if:

(1) the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, that is, a shameful or morbid interest in

nudity, sex, or excretion; and

(2) the work depicts or described, in a patently offensive way, sexual conduct of the kind cited in the following examples:

(a) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated;

(b) patently offensive representations or descriptions of masturbation, excretory functions and lewd exhibition of the genitals; and

(3) the material is utterly without redeeming social value.

You must find that all three elements exist in each magazine for it to be obscene.

Your verdict must be based on the evidence and testimony in this case and your determination of community standards for the State of Illinois; that is, how the magazine would be viewed by ordinary adults in the whole state rather than by the people in any single city or town or region within the State."

The last paragraph of that instruction is a modification of the last paragraph of IPI Criminal 2d No. 9.57. Where an IPI instruction is applicable, it should be given. (87 Ill. 2d R. 451(a); *People v. Haywood* (1980), 82 Ill. 2d 540, 545, 413 N.E.2d 410.) Thus, there was no reason to modify the last paragraph of IPI Criminal 2d No. 9.57. IPI Criminal 2d No. 9.57 properly informs the jury that they are to consider how the material would be viewed by ordinary adults in the whole State rather than by people in any single city or region. This, of course, is sufficient to inform the jurors that they cannot use their own personal standards in determining whether the materials are obscene. By giving this instruction as modified by defendant, which appears to state that the determination of community standards must be based only on the evidence and testimony, the instruction incorrectly implies that the jury may consider only evidence of community standards such as defendant's opinion survey, and not their own evaluation of how the particular material would be viewed by ordinary adults in the whole State. The court's instruction No. 1 apparently attempts to clarify that impression to allow the jurors in applying community standards to consider the material in light of their own collective observations in life in the State of Illinois. Neither modification of the last paragraph of IPI Criminal 2d No. 9.57 is necessary.

■ We conclude that in reading court's instruction No. 1 together with all the instructions, particularly the instruction defining obscenity, it is clear that the jury was properly informed that the magazines must not be judged by each juror's own personal standards, but by a community standard of the whole State. We therefore hold that the submission

of court's instruction No. 1, while unnecessary, was not harmful under the circumstances.

■■ Defendant's final contention is that the Illinois obscenity statute (Ill. Rev. Stat. 1983, ch. 38, par. 11—20) is unconstitutional because it is overbroad both on its face and as it has been applied by our supreme court to specific publications. Specifically, it argues that under the current application of the statute, material that appeals only to a normal, healthy interest in sex but which otherwise contains patently offensive sexual conduct and is utterly without redeeming social value can be criminally proscribed in violation of the protections afforded to such material by the first amendment. Defendant primarily bases its contention on the recent case of *Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 86 L. Ed. 2d 394, 105 S. Ct. 2794.

Recently, this court was presented with the same contention in *People v. Patroff* (1986), 141 Ill. App. 3d 483, 490 N.E.2d 148. We noted in *Patroff* that our supreme court has consistently upheld the constitutionality of the Illinois obscenity statute (141 Ill. App. 3d 483, 491, 490 N.E.2d 148; see also *People v. Ward* (1976), 63 Ill. 2d 437, 440-41, 349 N.E.2d 47; *People v. Morrison* (1985), 138 Ill. App. 3d 595, 598, 486 N.E.2d 345; *People v. Pope* (1985), 138 Ill. App. 3d 726, 734, 486 N.E.2d 350), particularly noting that Illinois courts have rejected the arguments that the statute is unconstitutionally vague or overbroad (*People v. Patroff* (1986), 141 Ill. App. 3d 483, 491, 490 N.E.2d 148; see also *People v. Ridens* (1974), 59 Ill. 2d 362, 372, 321 N.E.2d 264). We also examined whether *Brockett* had any constitutional implications for the Illinois obscenity statute, as asserted by defendant in its brief, and concluded that *Brockett* had no constitutional implications on the statute. In fact, the *Brockett* definition of prurience for the purposes of identifying obscenity, "that which appeals to a shameful or morbid interest in sex" (*Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, ____, 86 L. Ed. 2d 394, 406, 105 S. Ct. 2794, 2802), is similar to the Illinois statute's definition of prurient interest. (*People v. Patroff* (1986), 141 Ill. App. 3d 483, 491-92, 490 N.E.2d 148.) While defendant makes a detailed presentation of its argument and its analysis of the legal approach to obscenity, it fails to raise any new arguments concerning the constitutionality of the Illinois obscenity statute which persuade us to alter our opinion.

For the foregoing reasons, the circuit court is affirmed.

Affirmed.

UNVERZAGT and HOPF, JJ., concur.

## Appendix A

STATE OF ILLINOIS) IN THE CIRCUIT COURT FOR THE 16TH
 )SS. JUDICIAL CIRCUIT, KENDALL COUNTY,
COUNTY OF KENDALL) ILLINOIS

The People of the State of Illinois to all Peace
Officers of the State of Illinois.

### SEARCH WARRANT

On this day, _____Timothy McCann_____, Complainant,

has subscribed and sworn to a complaint for search warrant before

me. Upon examination of the complaint I find that it states

facts sufficient to show probable cause and I therefore command

that the following person or place:

Building known as Denmark Bookstore, 1300 Business 30, Aurora,

Kendall County, Illinois, premises described in attached Exhibit "A"

incorporated herein.

be searched and the following instruments, articles or things

which have been used in the commission of, or which constitute

evidence of the offense of _OBSCENITY IN violation of Chapter 38,_

Section 11-20, Illinois Revised Statutes;

BE SEIZED THEREFROM., NAMELY:

Magazines, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ containing depictions or portion
thereof of the following: Cunnilingus, fellatio, anal intercourse,
excretion of semen from penis onto other person, masturbation, vaginal

or anal insertion of prosthetic devices, insertion of tongue into anus.

I further command that a return and inventory of anything so

seized shall be made without unneccary delay before me or before

any court of competent jurisdiction.

**FILED**

JAN 23 1984

*Philip R. Lee*
CLERK OF THE CIRCUIT COURT
KENDALL County, Illinois

Date and time of issuance _1-23-84 at 12:05 P.M._

C-20

1068

 

## APPENDIX B

Robert Wunsch being first duly sworn deposes and says as follows:

1. That this affiant is a special investigator for the Kendall County State's Attorneys Office.

2. That this affiant is familiar with a business being conducted on 1300 Business 30, Aurora, Oswego Township, Illinois, known as Denmark Bookstore and situated on the following described premises: See attached Exhibit "A".

3. That this affiant entered the Denmark Bookstore on January 23rd, 1984 and I purchased two magazines, namely "Illegal Entry and "Golden Girls", which had depictions of the following:

 a. magazine entitled "Illegal Entry"depicted fellatio, anal intercourse, insertion of fingers into the vagina, insertion of tongue into anus, insertion of prosthetic device into vagina, cunnilingus, excretaion of semen onto buttocks of female, masturbation.

 b. magazine entitled "Golden Girls' depicted masturbation, fellation, anal intercourse, cunnilingus, excretion of semen onto hands of female.

4. That also while in the Denmark Bookstore on January 23rd, 1984 I examined the following books: "Anal Love", Anal Climax" and "Hot Black Boxes". These magazines showed depictions of one or more of the following: cunnilingus, fellatio, anal intercourse, excretion of semen from penus onto other persons, masturbation.

5. That all of the magazines above described were offered for sale to the public on January 23rd, 1984.

*Robert A. Wunsch*

Subscribed and sworn to before me this 23rd. day of January, 1984.

_____
 JUDGE.

C-22

## APPENDIX C

### COMPLAINT FOR SEARCH WARRANT

Timothy McCann _____, Complainant, being first duly sworn on oath, now appears before the undersigned Judge of the Circuit Court for the Sixteenth Judicial Circuit, Kendall County, Illinois, and requests the issuance of a Search Warrant to search the person or place as follows: Building known as Denmark Bookstore, 1300 Business 30, Aurora, Kendall County, Illinois, premises described in attached Exhibit "A" incorporated herein.

and seize the instruments, articles or things which have been used in the commission of, of which constitute evidence of, the offense of OBSCENITY IN violation of Chapter 38, Section 11-20, Illinois Revised Statutes.

Said instruments, articles or things being described as follows: Magazines, containing depictions or portion thereof of the following: Cunnilingus, fellatio, anal intercourse, excretion of semen from penis onto other persons, masturbation, vaginal or anal insertion of prosthetic devices, insertion of tongue into anus.

Complainant says that he has probable cause to believe, based upon the following facts, that the above listed things to be seized are now located upon the person and/or place set forth above: See attached affidavits of Timothy McCann and Robert Wunsch as adopted and incorporated herein.

# FILED

JAN 23 1984

*Shirley R Lee*
CLERK OF THE CIRCUIT COURT
KENDALL COUNTY, ILLINOIS

Subscribed and sworn to before me, this 23 day of January, 1984

_____
Complainant

C-21